### JOEL H. HILLS & another *vs.* DAVID A. SNELL.

A warehouseman had on storage two lots of flour, one belonging to A., the other and more valuable to B. A baker ordered twenty-eight barrels of flour from C.; and C., to fill the order, bought from A. twenty-eight barrels of his flour, and took from him an order on the warehouseman for them. The warehouseman, by mistake, delivered to C. twenty-eight barrels of B.'s flour; and the baker received this flour from C. and consumed it, not knowing, supposing or believing that it was different from that which he ordered, and gained no benefit from the mistake. *Held*, that the baker was not liable to the warehouseman in contract for the value of it, or any part of its value; nor in tort for its conversion.

CONTRACT on an account annexed, dated December 13, 1867, for the price of twenty-eight barrels of flour at $7 per barrel, making a total of $196; with a count for the same cause of action, alleging that the plaintiffs " on December 13, 1867, by accident and mistake delivered to the defendant twenty-eight barrels of flour of a higher grade, quality and cost than that to which he was entitled; that the defendant well knew the kind and quality and cost of the flour he was entitled to and was to receive, and well knew that the flour received by him was of a higher cost and value than and not the flour he was to receive and was entitled to recover; and the plaintiffs thereafter demanded of the defendant the value of said flour or the amount of the difference in price; but the defendant has neglected and refused to deliver the same or pay the difference; wherefore the plaintiffs say they are entitled to recover the amount thereof, to wit, the sum of $196, with interest."

The defendant answered, denying that the plaintiffs ever sold and delivered to him any flour at any price; and further, " that at or about the time alleged he did buy twenty-eight barrels of flour from certain flour-dealers, of whom he had been in the habit of buying, of a certain brand, and paid for the same the price agreed; that he received that number of barrels branded as the sample by which he purchased, and being in immediate and pressing need of the same in fulfilment of his contracts for bread, and without notice or knowledge of any alleged mistake, his agents and servants made the same into bread; that if the

flour was of a better quality than those of whom he purchased intended to send him, he is not responsible therefor, and has derived no benefit therefrom, and he is in no way or degree answerable to the plaintiffs, with whom he had no privity." The plaintiffs afterwards, on leave, amended their writ and declaration, so as to file a count in tort for the conversion of twenty-eight barrels of flour.

At the trial in the superior court, before *Morton*, J., these facts appeared: "The plaintiffs were dealers in and warehousemen of flour; and in December 1867 had on storage two lots of flour, one stored by Jacob Greenough, marked D, and another stored by Morse & Company, also marked D. The first was a very low grade of flour, and worth in the market about $6.25 the barrel, of too low a grade to be stamped by the inspectors; and had no other mark than D on the barrel. The other was a high grade of flour, had the inspector's brand or mark upon it, and was worth from $13 to $14 the barrel. One was a dark colored and coarse flour; the other white and fine. On December 11, 1867, the defendant ordered and bought of Kemble & Hastings twenty-eight barrels of flour; and, in order to fill the order, Kemble & Hastings bought of Greenough his flour, and received from him an order on the plaintiffs therefor. The teamster of Kemble & Hastings took the order to the plaintiffs, who by accident and mistake delivered to him twenty-eight barrels of the Morse flour; and the teamster carried the same to the railroad depot, whence it was forwarded to the defendant at New Bedford. The mistake was discovered about a month after the delivery."

"The plaintiffs introduced evidence tending to show that there was on the barrels actually delivered, besides the letter D, the inspector's brand, showing it to be one of the highest grades of flour; that, in appearance, there was a marked difference between the two; that the defendant was a baker, doing a very large business; and other evidence which he contended tended to show that he knew the flour which he received was in fact better than that which he purchased

" The defendant was a witness, and, under objection by the plaintiffs, testified that he did not know, suppose or believe, that the flour received by him was any way different from that which he purchased. The defendant also introduced testimony tending to show that he was accustomed to buy flour of Kemble & Hastings, and bought this flour without seeing it, ordering flour as good as the last he had bought of them ; that he used it to fill a contract he had made to supply the school ship with bread, and received no benefit from the mistake of the plaintiffs; and that he did not know that the flour he received was different from the flour he had contracted for.

" The plaintiffs asked the judge to instruct the jury as follows : If the contract between the defendant and Kemble & Hastings was for a different grade of flour than that which was delivered, the defendant, by that contract, acquired no title to the flour which was in fact delivered. And if it was used by him, there being marks upon the barrels indicating that it was a different flour from that which he really bought, or if the general appearance was so different that any man of ordinary experience in the business might have seen that it was a different article than that which he bought, the plaintiffs may recover. The bargaining by the defendant for an article of one grade, and the delivery of an article of another and different grade by accident or mistake, the article delivered not being the property of the defendant's vendor, did not pass any title to the defendant ; and, if it was used by the defendant under circumstances which satisfy the jury that the fact of the mistake must reasonably have been known to him, will entitle the plaintiffs to recover of the defendant for the value of the article so delivered. If the defendant has received property which never was that of his vendors, and which they never undertook to sell him, and which he never bought; and if he used it by himself or agent, even under mistake, so that he cannot return it, he, having had the beneficial use of it, is under obligation to recompense the true owner therefor. If the defendant actually received an article which he never intended to buy, nor his vendors to sell, and which they never had any title to, and used it, it is immaterial

whether the article he intended to buy would have been of greater or less value to him than that which he received; and therefore, if the plaintiffs are entitled to recover, they will be entitled to the fair market value of the article sent to and received by the defendant.

" The judge declined so to instruct them; but did instruct them that, if the plaintiffs delivered flour of Morse & Company instead of that of Greenough, by mistake, as claimed, and if the defendant received and used such flour, knowing that he had received flour different from that which he had bought; or if, from the marks on the barrels, the appearance of the flour, or other circumstances, he was led to believe that he had received flour different from that which he had bought, he would be liable to the plaintiffs for its value; but if the defendant was innocent in the transaction, and used the flour, supposing and believing it to be the flour he had bought, and receiving no benefit from the delivery of the wrong flour, he would not be liable." The jury found for the defendant, and the plaintiffs alleged exceptions.

*E. Avery*, for the plaintiffs.

*A. A. Ranney*, for the defendant.

WELLS, J. The defendant acquired no title to the flour delivered to him by mistake. He had no contract of purchase with the owner, nor with the plaintiffs, who were bailees of the owner. If he had received it with knowledge of the mistake, or used it after notice thereof, he would have been liable for the conversion. But, under the instructions of the court, the jury must have found that the defendant was not chargeable with notice or knowledge that the flour delivered was not the same he had bought; and that he used it in good faith, deriving no benefit from the plaintiffs' mistake. No demand appears to have been made upon him while the flour was in his possession. So that, if he is to be held responsible at all, it must be on the ground that he used the flour as his own, " supposing and believing it to be the flour he had bought" and paid for.

The declaration contains one count in contract, upon implied assumpsit for the price or value of the flour; and one in tort.

for its wrongful conversion. The action is brought by the ware-housemen, and is founded on their possession and special rights as bailees. But for all purposes of the defence the case stands precisely as if they were the general owners.

1. The facts will not support an implied assumpsit. There was no sale of the flour by the owner, nor by the plaintiffs. It was not delivered by the plaintiffs as upon any contract of sale with them, either as principal or as agents; but distinctly as a mere delivery to Kemble & Hastings under an order for other flour, of which they were also bailees for another principal. Both the sale and the delivery to the defendant were made by Kemble & Hastings. With them he had an express contract; and that is the only contract he can be held to have made in regard to the flour. There is no privity of contract established between the plaintiffs and the defendant. Without such privity, the possession and use or conversion of the property will not sustain an implied assumpsit. *Ladd* v. *Rogers*, 11 Allen, 209.

2. The elements of tort are also wanting. The unauthorized appropriation of personal chattels will generally be sufficient of itself to enable the true owner to maintain an action for their conversion. A purchase, in good faith, from one who has no title and no right to transfer the property, will not constitute a defence. Even an auctioneer or broker, who sells property for one who has no title, and pays over to his principal the proceeds, with no knowledge of the defect of title or want of authority, is held to be liable for its conversion to the real owner. *Coles* v. *Clark*, 3 Cush. 399. *Williams* v. *Merle*, 11 Wend. 80. *Hoffman* v. *Carow*, 20 Wend. 21; *S. C.* 22 Wend. 285. *Courtis* v. *Cane*, 32 Verm. 232. But this severe rule of law will not be applied when the act of appropriation can be justified as having been authorized in any manner by the owner of the property. Thus when, upon a conditional sale, the property is delivered and time given for compliance with the condition, one who purchases and resells the property before the right to perfect the title, by such compliance, has been terminated, is not liable for a conversion to the general owner who subsequently resumes his right to its possession. *Vincent* v. *Cornell*, 13 Pick. 294.

When the owner has given to another, or permitted him to have, control of the property, no one can be held responsible in tort for its conversion who merely makes such use of the property, or exercises such dominion over it, as is warranted by the authority thus given. *Strickland* v. *Barrett*, 20 Pick. 415. *Burbank* v. *Crooker*, 7 Gray, 158.

In this case, the plaintiffs delivered the flour to Kemble & Hastings as the flour purchased by them from Greenough. Against the plaintiffs, therefore, the delivery to Kemble & Hastings and the sale by them to the defendant was an authority to him to treat it as his own. That it was so delivered by mistake might have entitled the plaintiffs to reclaim the property from one having it in possession; or to recover its value from one who had disposed of it with knowledge of the mistake. *Chapman* v. *Cole*, 12 Gray, 141. But they cannot take advantage of their own mistake to convert into a tort that which has been done in good faith in pursuance of authority given by themselves.

The instructions given to the jury were in accordance with these principles, and were sufficient. It is not necessary to consider in detail those prayed for. They do not reach the point upon which, in our view, the case turns.

*Exceptions overruled.*