ERASTUS H. PEASE et al., Respondents, *v.* HENRY SMITH et al., Appellants.

$\begin{array}{|cc|} \overline{61} & \overline{477} \\ 121 & 276 \end{array}$

It is not necessary to the maintenance of an action for conversion, by reason of a wrongful sale of a plaintiff's goods, to show that defendants exercised control over the property with knowledge of plaintiffs' rights, or that a demand was made for the goods while they were in defendants' possession.

One who, having purchased stolen goods in the ordinary course of business in good faith, before knowledge of the owner's rights sells and delivers them to a third person, is liable to the owner without demand; and this, although the goods were never in his actual possession.

In an action for the conversion of goods stolen by plaintiffs' porter, plaintiffs were permitted to prove, under objection, that the porter had been convicted of the theft and sent to State prison. The object of the evidence, as stated, was to account for the absence of the porter as a witness. *Held*, that the reception of the evidence was no error ; that although it may not have been necessary, it was proper to account for the absence of the thief; and that no specific objection having been made, that it was improper to show he was confined for the particular offence, the question could not be presented on appeal; also, that it not being made to appear that the avowed object of the testimony was merely colorable, its reception was not improper, although it may have incidentally otherwise affected defendants' case.

*It seems*, that a refusal to charge that where a witness is false as to one statement, the jury ought not to place implicit reliance upon his other statements, is not error. The court can only, in such case, caution the jury to weigh the testimony with care and close scrutiny.

The maxim "*falsus in uno falsus in omnibus*" only applies where truth is intentionally disregarded.

A refusal to charge that where a defendant acts in good faith, and has not intentionally-interfered with the property of another, the jury ought to require clear and positive evidence before making him liable for conversion, is not error; those facts do not prevent the jury from determining the case upon circumstantial evidence.

Negligence on the part of the owner of stolen property, which contributed to the loss, will not bar a recovery for the conversion thereof by an innocent purchaser, at least unless the negligence be so gross that he may be considered as consenting to the theft.

(Argued September 22, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment

in favor of the plaintiffs entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 5 Lans., 519.)

The action was brought for the alleged conversion by the defendants of a quantity of law blanks belonging to the plaintiffs.

Plaintiffs were book-sellers and stationers in the city of Albany. The defendants dealt largely in materials used in the manufacture of paper. Their course of business was to purchase from junk shops and small dealers rags, old paper, etc., in bales, and to sell to the manufacturers. They bought, among others, from Moses K. Perry, a junk dealer in Albany. The evidence upon the trial tended to show that among the materials purchased from Perry were law blanks belonging to the plaintiffs, which had been stolen from them by one Frank Mason, who was a porter in their employ. He lived in the building occupied by plaintiffs as a store, had the key to it, and it was his business to open it in the morning. He delivered packages and parcels of books, and went upon errands, etc., but was never authorized to sell their goods. Certain bales of paper materials containing these blanks were shipped after purchase by the defendants from Perry's store to Allen Brothers, paper manufacturers at Sandy Hill. The defendants paid five cents per pound for the materials bought from Perry. Mason was detected in carrying away law blanks by Pease, one of the plaintiffs. The plaintiffs opened several bales of paper materials at Perry's and took out of each some law blanks, amounting to 237 pounds. They also obtained from Allen Brothers 700 or 800 pounds of blanks, paying five cents a pound for them. Evidence was offered tending to show that blanks with the names of the plaintiffs upon them had been used in manufacturing by Allen Brothers. The good faith of the defendants was not questioned. It was shown that a demand was made of the defendants for the value of the blanks before the commencement of the action, and soon after the discovery of the loss; payment was refused by the defendants. Other facts will be found in the opinion. A

motion for a nonsuit was made and denied, defendants' counsel duly excepting, and the jury rendered a verdict for the plaintiffs.

*Amasa J. Parker* for the appellants. It was error to permit plaintiffs to prove that their porter had been arrested and convicted for stealing the goods and sent to prison. (*Baird* v. *Gillett*, 47 N. Y., 186.) There can be no conversion by exercising control over property, unless it is done knowingly. (*Barrett* v. *Warren*, 3 Hill, 348, 350; *Millspaugh* v. *Mitchell*, 8 Barb., 33; *Tallman* v. *Turck*, 26 id., 167.) The judge erred in refusing to charge that the jury should require clear and positive evidence before they could make defendants liable. (2 Bouv. L. Dic., "Positive;" 3 Bouv. Inst., n. 3057.) The judge erred in refusing to charge that if plaintiffs' negligence contributed to the loss of their property they had no legal claim against an innocent purchaser. (*Hill* v. *Snell*, 6 Am. R., 217; 104 Mass., 173; 20 Pick., 415.)

*W. Packer Prentice* for the respondents. Errors in the reception of evidence, so long as the amount recovered is not excessive, should not now be considered. (*Bronson* v. *Tuthill*, 3 Keyes, 32; *Schappner* v. *Second Ave. R. R.*, 55 Barb., 497.) The facts and evidence were sufficient to have sustained a larger recovery. (*Parker* v. *Jervis*, 3 Keyes, 271; *Bronson* v. *Tuthill*, id., 32; *Disbrow* v. *Tenbroeck*, 4 E. D. S., 397; *Channon* v. *Lusk*, 2 Lans., 211; *Keeler* v. *Firemen's Ins. Co.*, 3 Hill, 251; *Barrett* v. *Warren*, id., 348; *Winne* v. *McDonald*, 39 N. Y., 233; *Chubbuck* v. *Vernam*, 42 id., 432; *Laning* v. *N. Y. C. R. R.*, 49 id., 524.) A sale of chattels by one not owning them, or having authority to sell, confers no title, even if the vendor is in possession at the time of the sale and the vendee purchases in good faith. (*Hoffman* v. *Carow*, 22 Wend., 285; *Dudley* v. *Hawley*, 40 Barb., 397; *Spaulding* v. *Brewster*, 50 id., 142; *Cobb* v. *Dows*, 10 N. Y., 335; *Boyce* v. *Brockway*, 31 id., 490; *Ballard* v. *Burgett*, 40 id., 314; *Brown* v. *Peabody*, 13 id., 121;

*Everitt* v. *Coffin*, 6 Wend., 604; *Connah* v. *Hale*, 23 id., 462; *Salters* v. *Everett*, 20 id., 270; *Covill* v. *Hill*, 4 Den., 323; *Disbrow* v. *Tenbroeck*, 4 E. D. S., 397; *Murray* v. *Burling*, 10 J. R., 172; *La Place* v. *Aupoix*, 1 J. Cas., 407; 1 Smith's L. Cas., 892.)

Dwight, C. There are several objections raised by the defendants on this appeal.

I. It is claimed that the judge erred at the trial in refusing to grant a nonsuit, because the defendants bought the goods in controversy in the course of trade, and had sold them before any claim was made by the owners. It is insisted by the appellant that it is a prerequisite to a valid claim for conversion, in such a case, that a demand should have been made for the goods while they were in the defendants' possession, and before their sale, and that there can be no conversion, unless control over the property was exercised with knowledge of the plaintiffs' rights. This proposition is untenable. The assumed sale by the porter of the plaintiffs to Perry was wholly nugatory, and conveyed no title. (*Saltus* v. *Everett*, 20 Wend., 267; *McGoldrick* v. *Willets*, 52 N. Y., 612.) On like grounds, the sale by Perry to the defendants was without effect. They were constructively in possession of the plaintiffs' property without the consent of the latter. They even sent their own carts to transfer the goods when sold to Allen Brothers. This exercise of an act of ownership or dominion over the plaintiffs' property, assuming to sell and dispose of it as their own, was, within reason and the authorities, an act of conversion to their own use. The assumed act of ownership was *inconsistent* with the dominion of the plaintiffs, and this is of the essence of a conversion. Knowledge, and intent on the part of the defendants, are not material. So long as the defendants had exercised no act of ownership over the property, and had acted in good faith, a demand and refusal would be necessary to put them in the wrong and to constitute conversion. Until such demand, there is no apparent inconsistency between their possession

and the plaintiffs' ownership. After a sale has been made by the defendants, they have assumed to be the owners, and will be estopped to deny, in an action by the lawful owner, the natural consequences of their act, and to resist an action for the value of the goods. The principle is well stated by ALDERSON, B., in *Fouldes* v. *Willoughby* (8 M. & W., 540) : "Any asportation of a chattel for the use of the defendant or a third person amounts to a conversion for this simple reason, that it is an act inconsistent with the general right of dominion which the owner of a chattel has in it, who is entitled to the use of it at all times and in all places." In the same spirit, "conversion" is defined, in a very recent case, to be an unauthorized act which deprives another of his property permanently or for an indefinite time. (*Hiort* v. *Bott*, L. R. [9 Ex.], 86 [A. D. 1874].) So, it is said in *Boyce* v. *Brockway* (31 N. Y., 490), that a wrongful intent is not an essential element in a conversion. It is enough that the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it.* No manual taking, on the defendants' part, is necessary. (*Bristol* v. *Burt*, 7 J. R., 254; *Connah* v. *Hall*, 23 Wend., 462.) The case of *Harris* v. *Saunders* (2 Strobh. Eq., 370), resembles closely the case at bar. The defendant having the property of the plaintiff in his own hands by purchase from one who had no title, sold it to another who carried it beyond the plaintiff's reach, and received the purchase-money. These acts were held to amount to a conversion, though the defendant was not aware of the plaintiff's title. As, according to these views, the conversion took place at the moment of the unauthorized sale by the present defendants, no demand was necessary, the sole object of a demand being to turn an otherwise lawful possession into an unlawful one, by reason of a refusal to comply with it, and thus to supply evidence of a conversion. (*Esmay* v. *Fanning*, 9 Barb., 176; *Vincent* v. *Conklin*, 1 E. D. Smith, 203; *Glassner* v. *Wheaton*, 2 id., 352; *Munger* v. *Hess*, 28 Barb., 75.) After a wrongful

---

* See *Hollins* v. *Fowler* (House of Lords, July 6, 1875).

taking and carrying away of the property, the cause of action has become complete without further act on the plaintiff's part. (*Brewster* v. *Silliman*, 38 N. Y., 423; *Hanmer* v. *Wilsey*, 17 Wend., 91; *Otis* v. *Jones*, 21 id., 394.)

II. Another point, and one on which the defendants laid much stress is, that the judge on the trial permitted the plaintiffs to prove, under objection, that the porter was arrested and convicted of this theft, and sent to the Clinton State prison. It is urged that this testimony was entirely immaterial and irrelevant, and calculated to prejudice the defendants' case in the opinion of the jury. The plaintiffs reply to this objection, that they introduced it to account for the absence of Mason from the trial as a witness. I think that they had a right to account for Mason's absence. It may not have been strictly necessary, and yet it was proper. The case was made up of shreds and patches of circumstantial evidence. There was enough for the jury to act upon, and yet direct evidence would have been far more satisfactory. A failure to account for Mason's absence would have been likely to have weakened, in the minds of a jury, a case that was not very distinctly proved. In this view, the plaintiffs had a right to give a complete account of Mason's absence, and to show that he was not only in Clinton prison, but there for a crime which would incapacitate him from testifying and would render a writ of *habeas corpus ad testificandum* useless and inoperative. It may, however, be claimed that the question should have been a general one, whether Mason was sentenced to State prison, and not whether he was there for this particular offence. The answer to this view is, that no such objection was taken at the trial. The objection by the defendants to the evidence simply was that it was not material for any purpose. If they had pointed out the particular objection above referred to, it might have been obviated. As it was, the evidence tended to place the plaintiffs in a right condition before the jury. If it incidentally affected the defendants' case, the plaintiffs are not responsible for such a casual and indirect effect, which could not by them be avoided. It

is true that if the plaintiffs had called out this evidence for an apparently legitimate purpose, and had used it for a different purpose, their act would have been improper. Where the avowed object is plainly merely colorable, the admission of the evidence, under such circumstances, is error. (*Coleman v. The People*, 55 N. Y., 81.) There was, however, no such colorable appearance as to bring the case at bar within the operation of this rule. It may be added, that during the whole course of the trial, the fact of the theft by Mason appears to have been acted upon by both parties, and to have been, at least, tacitly assumed. The evidence objected to could, accordingly, have done the defendants no harm, and no ground is made for the reversal of the judgment.

III. The other points in the case concern some alleged errors in the charge of the judge.

One of these is, that he refused to charge that where a witness is false as to one statement, the jury ought not to place implicit reliance upon other statements made by that witness. It is claimed that this was a denial by the judge of the soundness of a well known legal maxim, *falsus in uno, falsus in omnibus.*

The court had no power under this maxim to instruct the jury that they "*ought*" not to place reliance upon the statements of such a witness. The word "ought" would express a legal duty or obligation on their part to obey the maxim. On the other hand, the jury are clearly at liberty to believe the witness, notwithstanding that they may, if they see fit, disregard his testimony. The most that the judge can do is to caution them to weigh such testimony with care and close scrutiny. All testimony, when once admitted in the cause, is, in general, for the jury to consider, whether it be that of an accomplice in crime, or of a person discredited as to his general character, or not strictly regardful of the truth. (3 Wis., 645, 647; 3 Jones [N. C.] Law, 257; 1 id., 251; *White v. McLean*, 57 N. Y., 670; *Merritt v. Lyon*, 3 Barb., 110; *Dunn v. The People*, 29 N. Y., 523; *Wilkins v. Earle*, 44 id., 172; *Warren v. Haight*, 62 Barb., 490; *People v.*

*Evans,* 40 N. Y., 1.) There may be an exception to this rule, where the witness is shown to be guilty of perjury, though not convicted of the offence.

The instruction asked for was not shaped in such a form as properly to be given. Moreover, the rule itself does not refer merely to cases of want of truth, but to those where there is an intentional disregard of it. (Per Story, J., in *The Santissima Trinidad,* 7 Wheat. [U. S.], 338, 339; *Wilkins* v. *Earle supra.*) There was no evidence of a willful disregard of truth in the case at bar, so that the instruction asked for was purely upon an abstract question, and would, in one sense of the word "false," include cases of the most innocent deviation from the truth. In that case, the only criticism upon the testimony is, that there is a defect of memory. (*Hall* v. *Houghton,* 37 Me., 411; *Brennan* v. *The People,* 15 Ill., 511.) A judgment cannot be reversed for a refusal to give a charge upon a proposition presented without the proper qualifications or application to the case in hand.

Another request to charge was, that where a defendant acts in good faith, and has not intentionally interfered with the property of the plaintiff, every presumption should be in favor of the defendant, and the jury ought to require clear and positive evidence before they can make the defendants liable. This request was refused. There was no error in this refusal. There is no rule of law that the jury must be confined in this class of cases to any particular line of evidence. The proposition is a simple one, that a purchaser from a thief gains no title. The theft and purchase may be proved by any legitimate evidence, whether direct or circumstantial. The jury are of course to be satisfied of the truth of the facts alleged, but there is no rule to the effect that their conviction must be produced by any particular form of evidence, or such as may be described as "clear and positive." The word "positive," as applied to evidence by law writers, means direct, as distinguished from circumstantial, evidence. (Bouvier's Law Dictionary defining the word *positive.*) The same writer in his Institutes, says: "Evidence is direct and

positive when the very facts in dispute are communicated by those who have the actual knowledge of them by means of their senses. * * * Circumstantial evidence is the proof of collateral facts, and differs from direct and *positive* proofs in that it never proves directly the fact in question." (Institutes, vol. 3, §§ 3061, 3062.) As the facts in a trial in a court of justice may be proved by circumstantial evidence, it follows that the request to charge was properly denied.

The same request was put in a somewhat different form, when the judge was asked to charge that the verdict could not be based upon mere conjecture or inference, but must rest upon direct and positive testimony; and if the evidence is not of the latter character, the plaintiffs cannot recover. This form of statement is equally objectionable, as it requires positive testimony and repudiates that which is circumstantial.

Another request to charge was, that if the plaintiffs by negligence contributed to the loss of their property, they have no legal claim against an innocent purchaser. This proposition cannot be maintained in the form in which it is presented, as applicable to this case. In the first place it is a mere abstract proposition, as there was no evidence to show any "negligence contributing to the loss." All the facts showed that this was a case of mere theft. The goods were stolen by one in whom the plaintiffs had confidence, and in respect to whom they had no grounds of suspicion. The thief was a person necessarily employed in their business. Business could scarcely be carried on without porters, or persons, having the bare charge and custody of goods or the keys of stores, with full power to open them early in the morning, in the absence of their employers, and make them ready for the occupations of the day. I can see in the conduct of the defendants no evidence of negligence. But if there were some evidence of negligence, I could not assent to the broad and unqualified proposition of the defendants. Under that, any evidence of negligence, however slight, contributing to the abstraction of the property,

would bar all recovery. There may, perhaps, be strong
cases where the negligence of the owner would be so gross as
to so invite plunder that he might be regarded as a consent-
ing party and thus be deprived of all right of recovery.
The present is not one of them. We are referred to the cases
of *Hills* v. *Snell* (6 Am. R., 216 ; S. C., 104 Mass., 173) and
*Strickland* v. *Barrett* (20 Pick., 415). These cases fall far
short of maintaining the doctrine for which the defendants
contend.

In *Hills* v. *Snell* a warehouseman had on storage two lots
of flour, one belonging to A., and the other and more valua-
ble to B. A. baker ordered twenty-eight barrels of flour
from C., who to fill the order, bought from A. the same num-
ber of barrels of his flour and took an order for them on the
warehouseman. The latter person, by mistake, delivered to
C. twenty-eight barrels of B.'s flour ; the baker received it
from C. and consumed it, not knowing or believing that it
was different from that which he ordered, and gaining no
benefit from the mistake. It was held that an action for con-
version could not be brought by the warehouseman against
the baker. It will be observed that, in this case, the plain-
tiffs were the very persons who made the mistake, and who,
by a positive act, led the baker to suppose that he had full
right to the property. He was thus by their act led to
assume a position of such a nature that he could not restore
the goods. The court said : "The plaintiffs cannot take
advantage of their own mistake, to convert into a tort that
which has been done in good faith in pursuance of *an autho-
rity* given by themselves." (P. 178.) In the case at bar
there was no authority of any kind to the porter to deliver
the property to Perry. There was a bare custody on the
part of Mason *to retain the goods in the store* for the use of
the plaintiffs. This cannot be converted into a power to
deliver to another. If the plaintiffs had, in pursuance of an
order from Perry for waste paper, by mistake delivered to
Mason law blanks instead of the goods ordered, with instruc-
tions to make them over to Perry, and the defendants had

then bought and sold without the knowledge of the mistake, there might have been grounds for invoking the rule in *Hills* v. *Snell.* The facts of the present case are not sufficiently similar to those involved in that decision to make it authority for our decision.

The same remark may be made of *Strickland* v. *Barrett* (*supra*). In that case a mortgagor of chattels was allowed to remain in possession by the mortgagee; the mortgagor sold the goods and aided the purchaser in clandestinely removing them from the State. B., acting in good faith, assisted the purchaser in the removal. It was held that he was not guilty of conversion, as the purchaser had the apparent power of removal. The court said that the mortgagor had the right of possession and *might lawfully direct the removal,* if not done with intent to injure the mortgagee and to deprive him of his property. It was simply the case of a person, acting in good faith, aiding a person in doing what the owner of goods had apparently authorized. Neither of these cases have any application to the bare custody of a servant or porter, like Mason, even though he were sometimes sent upon errands of inquiry as to the price of waste paper. As well might it be said that a servant had an apparent authority to dispose of his master's silver ·spoons because he had them in custody, and because he had occasionally been sent to a junk shop to inquire as to the price of refuse tin-ware, which his master was willing to sell.

The final error complained of in the charge is, that the judge did not on request instruct the jury as follows: " If it is proved that Allen Brothers (of Sandy Hill) had bought paper materials from one Ouderkirk, and that the blanks may have come in boxes bought from him, the plaintiffs cannot recover against the defendants."

The evidence which led to this request was, that Perry had sold paper stock to Ouderkirk, of Troy, as well as to the defendants. Allen Brothers were in the habit of purchasing paper of Ouderkirk. Wait, a manufacturer of paper at Sandy Hill, had found law blanks (five or six reams in all)

with the plaintiff's name on them, in materials which he bought of Ouderkirk. Wait never bought of the defendants, nor did the defendant Graves ever sell stock to Ouderkirk. This request was rightly refused. There was no evidence to justify the jury in believing that the blanks in litigation came through Ouderkirk. On the other hand, it was very probable that they came from the defendants. The jury had a right to pass on the evidence as it was presented without being embarrassed as to any speculative theories as to the possibility of their being derived from other sources, as to which there was nothing, at best, to lay before them but plausible conjecture.

On the whole, no error was committed at the trial, and the judgment of the court below should be affirmed.

All concur.

Judgment affirmed.