## New York and New England Railroad Company *vs.* Thomas Sanders & another.

Worcester.  Oct. 3, 1882. — Jan. 9, 1883.  C. Allen, Colburn & Holmes, JJ., absent.

A carrier, having a lien for freight upon an entire cargo of coal, delivered a portion of it, on the order of the consignee, to a person who had purchased the whole cargo from the consignee. Subsequently, the carrier, on the arrival of the remainder of the coal, notified the purchaser that he claimed a lien on the remainder for the freight of the entire cargo, and ordered him not to disturb or unload it. The purchaser, without right, appropriated the remainder of the coal to his own use. *Held*, that the fact of such taking did not, of itself, as matter of law, import a promise on the part of the purchaser to pay to the carrier the freight of the entire cargo.

Morton, C. J. The material facts in this case are as follows: The firm of William Edwards's Sons bought a cargo of coal in New Jersey, which was shipped by water to Norwich, consigned to the order of the seller. At Norwich, the plaintiff received it and paid the freight, and billed the coal to said Edwards's Sons at Sandersdale. Before any of the coal arrived at Sandersdale, Edwards's Sons sold it to the defendants, and directed the plaintiff to deliver it to them. The plaintiff accordingly delivered to the defendants, as it arrived, all of the coal except nine car loads, without any demand for the freight. Before the nine car loads arrived at Sandersdale, Edwards's Sons failed, and the plaintiff then notified in writing the defendants "not to disturb or unload from the cars any part of the coal consigned to William Edwards's Sons, as the freight and charges on the same are unpaid."

Afterwards, on the same day, said nine cars of coal arrived, and the plaintiff placed them on the side track running by the defendants' coal sheds, where it had been the custom to leave cars containing coal for the defendants, and the defendants, without

any authority from the plaintiff, unloaded the coal into their sheds and used it. The plaintiff did not contend, before the defendants took the nine car loads of coal, that the defendants were personally liable for the freight upon it, and the defendants did not understand or believe that the plaintiff looked to them for said freight; but they were notified and understood that the plaintiff claimed a lien upon the undelivered coal for the whole freight and the advances upon the whole cargo, and did not intend to deliver it unless such freight and advances were paid.

The declaration has three counts. The first two may be treated as one, being the same in substance. They are counts in contract, alleging a promise of the defendants to pay the freight and charges upon the whole cargo. The third is a count in tort for the conversion of the nine car loads.

At the trial, it was admitted that the plaintiff was entitled to recover on the third count; and the only question was whether, on the foregoing facts, it could recover on the counts in contract. The plaintiff asked the court to rule that, "if the defendants, being the owners of said coal subject to the lien, took the coal, having notice that the plaintiff claimed a lien on it for the whole freight and advances, and did not intend to deliver it to the defendants unless they paid such freight and advances, a promise to pay such freight and charges would be implied, and the plaintiff is entitled to recover on his counts in contract." The court refused this ruling, and, the case being tried without a jury, found for the plaintiff on the count in tort for the value of the nine car loads.

The only question before us is whether the Superior Court was justified in refusing this ruling. In other words, the question is whether the defendants, if they knew that the plaintiff claimed a lien upon the coal for the whole freight, and did not intend to deliver it to the defendants unless they paid such freight, are conclusively presumed, as matter of law, to have promised to pay such freight from the mere fact of taking the coal. It is not contended that there was any express promise to support the counts in contract. The plaintiff contracted with and looked to said Edwards's Sons for the payment of the freight. It is not contended that the defendants, when they took the coal, were under any obligation to pay the freight. We are

unable to see how, from the fact of the taking, an implied assumpsit arose. There was no privity of contract shown between the plaintiff and the defendants. The taking of the coal may be evidence of a promise to pay the freight, but the mere fact of taking without right does not in law import such promise.

The plaintiff contends that the defendants cannot be heard to say that they merely intended to convert the property, in violation of the plaintiff's rights. But we know of no principle of estoppel which prevents them from setting up the truth, though it shows their own wrongdoing. The same argument would apply whenever a man obtains property of another by theft, or by any other tort, and would break down the distinction between actions of contract and of tort. There is no reason for adopting the violent fiction that the man who thus obtains property promises to pay for it, because in the cases supposed, as in the case at bar, the rights of the owner are fully protected by recovering in an action of tort the full value of his property. *Ladd* v. *Rogers*, 11 Allen, 209. *Hills* v. *Snell*, 104 Mass. 173.

The plaintiff relies upon the case of *New Haven & Northampton Co.* v. *Campbell*, 128 Mass. 104. The circumstances of that case and the relations existing between the parties were materially different from those existing in the case at bar; and further, upon a careful examination of that case, it will be seen that the question whether, under the circumstances there existing, the law implied a contract by the defendant to pay the freight sought to be recovered, was not raised or adjudicated. The question before the court was whether in such a case a count in contract could be joined with a count in tort. In discussing this question, the court says, that if the defendant took the flour " with the knowledge that the plaintiff claimed a lien and looked to him for the payment of the freight and charges, a promise to pay would be implied." It would perhaps have been more accurate to have said that " a promise to pay might be implied." It was not the purpose of the opinion to state that, under the facts of that case, a promise to pay would, as matter of law, be implied. That question was not raised or discussed.

*Judgment on the finding.*

*F. P. Goulding*, for the plaintiff.
*A. J. Bartholomew & F. T. Blackmer*, for the defendant.