AUTOMOBILE FINANCE AND SECURI-TIES COMPANY v. GLOBE INDEM-NITY COMPANY

---

(November 14, 1925, Opinion and Decree)
(January 4, 1926, Rehearing Refused)
(March 2, 1926, Writs of Certiorari and Review Granted by the Supreme Court)
(May 18, 1926, Decree Supreme Court. See La. Reports)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Indemnity—Par. 3.**

An indemnity company which insures a chattel mortgage creditor against the latter's direct pecuniary loss resulting from theft, embezzlement or conversion of a mortgaged automobile, by either the direct act of the mortgage debtor or through his connivance with others, is liable for all such loss sustained by the insured, where the debtor, as purchaser of the automobile, sells it through the intervention of an agent who fails to account for the proceeds.

2. **Louisiana Digest—Indemnity—Par. 6.**

Courts will not favor highly technical defenses to suits under such a contract.

Appeal from Civil District Court, Parish of Orleans, Division "F", Hon. Percy Saint, Judge.

Action by Automobile Finance and Securities Company against Gloge Indemnity Company. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Spencer, Fenner, Gidiere and Marks, of New Orleans, attorneys for plaintiff, appellee.

Monroe and Lemann, of New Orleans, attorneys for defendant, appellant.

BELL, J.   This is an action brought by plaintiff, an automobile finance company, against defendant, upon a policy of insurance or indemnity bond issued by defendant in plaintiff's favor. The material provisions of the contract in relation to the facts involved in this case are as follows:

"Whereas, certain persons, firms and corporations (hereinafter called the 'Purchaser') hold in their custody in the United States of America or its possessions, or in the Dominion of Canada, cer-

tain property consisting of motor vehicles, which they have purchased or acquired from dealers, the price of which is payable in installments, and which installments are represented by notes or other negotiable instruments of the purchasers, secured by chattel mortgage, conditional sale, deed of trust or lease agreement, and such notes are acquired or owned by Automobile Finance and Securities Company, in the course of its business:

"Now, therefore, in consideration of the payment of an agreed premium, Globe Indemnity Company (hereinafter called the 'Surety') does hereby agree to indemnify said Automobile Finance and Securities Company (hereinafter called the 'Obligee') against such direct pecuniary loss as the Obligee may sustain by any act of larceny, embezzlement, or conversion of the purchaser, whereby the obligee is deprived of the security of any motor vehicle, listed in any schedules made a part hereof, as hereinafter provided, either directly or through the connivance with others on the part of any purchaser named in the said schedules.

* * *

"The foregoing agreement is subject to the following conditions:

* * *

"No. 4. The liability of the surety on account of any purchaser is limited to the amount of the purchase price unpaid at the time of any larceny, embezzlement or conversion aforesaid, and such liability shall not exceed the sum set opposite the name of the purchaser in any schedule."

The facts of this case are undisputed, and may be thus stated:

On June 30, 1920, Duggan, Inc., (a corporation engaged in the business of buying and selling automobiles in the City of New Orleans) sold to one Clarence E. Patton a used Case automobile for the price of $1,526.62, the purchaser paying $381.66

cash, and for the balance of the price giving twelve notes, each for the sum of $95.41, payable monthly, and secured by a chattel mortgage and vendor's lien upon the automobile.

The name of Duggan, Inc., was changed to that of Hamilton Motor Corporation, Peter Hamilton being the Vice-President and managing official. For brevity, any acts of this corporation or of its manager, will be referred to as those of "Hamilton".

In order to finance his credit sales, Hamilton had a regular arrangement with the plaintiff, whereby the latter purchased the chattel mortgage notes representing the credit portion of the purchase price of these sales, and the Patton notes were acquired by the plaintiff in this way. To avoid the indorsement of all of these notes by Hamilton, and at the same time to obtain his guarantee of their payment, the plaintiff had an agreement with Hamilton whereby he bound himself to pay the amount due plaintiff by any chattel mortgage debtor upon plaintiff's foreclosing such chattel mortgage, buying in the mortgaged automobile, and tendering it to Hamilton.

On October 15, 1919, in order to protect itself from loss resulting from the improper disposal of mortgaged automobiles by mortgage debtors, plaintiff procured the issuance to it by defendant of a blanket policy, the material provisions of which have been noted above.

It is admitted that Patton, as the purchaser and possessor of the mortgaged automobile in question, was duly reported as a risk under this policy, and that the proper premium covering such risk was paid.

Patton was then in the employ of Hamilton, but soon thereafter left his employ, became dissatisfied with his purchase, and manifested an intention not to pay his chattel mortgage notes. Hamilton thereupon secured possession of Patton's automobile from Patton, and kept it in the establishment occupied by Hamilton. This was done with plaintiff's knowledge. The first two of the twelve notes were paid some time after their maturity, but the other ten notes were not paid, and are those involved in this suit. The testimony leaves some doubt as to whether the first note was paid by Patton before he delivered the automobile into Hamilton's possession, or whether it was paid by Hamilton after he had repossessed the automobile, but the second note was admittedly paid by Hamilton after the automobile was left with him.

Thereafter, Hamilton sold this automobile, as an unincumbered car, through the agency of another corporation, known as the Lapps Motor Company. This sale was made without the knowledge or consent of the plaintiff. Plaintiff employed detectives in an unsuccessful effort to locate the car. The evidence indicates that after being resold two or three times the car finally left the State and appellant's chattel mortgage lien was accordingly extinguished.

There is some controversy as to whether the Lapps Motor Company accounted to Hamilton for the proceeds of the sale. It is admitted that Hamilton did not account to the plaintiff for these proceeds, but retained whatever he received from the Lapps Motor Company on this sale.

Upon Hamilton's failure to pay any of the outstanding notes, except those already referred to, plaintiff was led to investigate the whereabouts of the various automobiles upon which it had chattel mortgages, and which were supposed to be in the possession of Hamilton. This investigation led to the discovery of the disposal of the car, the making of a claim under the policy in question and the institution of this suit. Shortly after this discovery Hamilton went into bankruptcy.

Plaintiff, in its petition, alleges in substance the facts above noted, sets up the bond, also the act of mortgage and the ten unpaid notes secured by chattel mortgage upon the automobile described in the petition. It further alleges that it has been deprived of its security because of an act of conversion on the part of Patton, the "purchaser", so styled in the bond, and accordingly prays that it be indemnified by the defendant company as surety against the direct pecuniary loss that plaintiff has sustained, to the full amount of the notes, to-wit: $954.14, with such interest and attorney's fees as are stipulated in said notes, and for an additional sum of $50.00, with legal interest thereon from judicial demand. The latter amount is for costs incurred by plaintiff for detective services rendered in search of the lost automobile.

Exceptions of no cause or right of action having been overruled, defendant answered by admitting the issuance of the indemnity bond in favor of plaintiff, and also the execution of the chattel mortgage act and notes in relation to the automobile described in the petition. It was also admitted that due notices of loss and of claim for loss were received from plaintiff. All other allegations of the petition were denied.

There was judgment in favor of plaintiff, and defendant has appealed.

Defendant's principal contention, as we gather it from counsel's brief and argument, is, that under the unusual situation presented by the facts of this case, the improper sale of the automobile causing loss of plaintiff's chattel mortgage security was not the act of Patton, the mortgage debtor, but was the independent act of Hamilton, a third person, whose honesty the defendant did not insure. We are urged to so interpret the indemnity bond now before us, and to refrain from adopting the general rule of law which calls for a liberal construction of such contracts in favor of the insured. In support of this contention, citation is made from 32 C. J., 1158, as follows:

"The rule that a policy or contract of insurance is to be construed strictly against the company and liberally in favor of insured applies only to the language of the policy or contract and not to the facts of the case. It does not apply where the language of the contract is unequivocal and unambiguous and sufficiently plain and clear to express the intent of the parties, or where the language has acquired, by judicial construction, a clear and definite meaning, or where an ambiguity in particular provisions disappears when the contract is considered as a whole, or where an ambiguity has been explained and removed by parole evidence, or where there is no fair room for construction. The court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning, or add something to the contract which the parties have not put there, in order to create an ambiguity and thereby render the rule applicable."

Also, Joyce on Insurance, Sec. 219, as follows:

"If the terms of the contract are express, the court cannot extend or enlarge the contract by implication so as to embrace an object distinct from that originally contemplated. In insurance contracts the insurer undertakes to guarantee the insured against loss or damage upon the exact terms and conditions specified in the agreement, and upon no other, and, therefore, courts cannot change the contract nor make a new one for the parties. It is their duty to enforce and carry out the one already made, and nothing ought to be imported into the constract by constructon contrary to its express terms."

It is argued that particular application of the above noted principle has been observed in innumerable cases wherein recovery is denied under policies of fidelity insurance, and where the contemplated dishonesty of the insured's employee has arisen after the duties and responsibilities of the employee have materially changed from those existing at the date of the policy. However sound such a principle may be, it can have no application to the facts presented in the instant case.

Neither Patton, the purchaser, nor even Hamilton or the Lapps Motor Company, through connivance with whom Patton might be charged with acts of conversion, is shown to have been at any time employed by the insured, or to have been entrusted with any duties or responsibilities which were materially changed after defendant assumed the risk here involved.

The principle matter for determination is whether Patton, the party admittedly designated as the purchaser named in the bond, either directly or through connivance with Hamilton or others acting on the part of Patton, committed an act of conversion whereby plaintiff was deprived of the security listed and described in the bond.

There is evidence in the record showing that the act of sale and chattel mortgage were executed at the office of the

Automobile Finance ꞏ and Securities Co., and that Patton then and there signed and executed all of the chattel mortgage notes, and made them payable directly to the order of the plaintiff company. Though the act recites Hamilton to be the vendor of the car, the unpaid balance of the purchase price as represented by the notes was made payable to plaintiff with Hamilton's knowledge and consent. It follows, therefore, that Patton is bound to have known, at the moment of his purchase and also at the time he permitted Hamilton to repossess himself of the car, that he, Hamilton, had no ownership or interest whatever in the car. Knowledge of such facts was likewise in Hamilton. To deliver or surrender the car to Hamilton was therefore a reckless disregard of plaintiff's rights to the security granted under the mortgage, and was plainly an act of conversion, such as was contemplated under the bond. In our opinion, there is scant necessity for even liberal interpretation of the contract in question, in order that we may be justified in reaching such a conclusion.

The meaning of conversion is fully and clearly defined in Words and Phrases, page 1566, as follows:

"A conversion is defined to be any act of the defendant inconsistent with the plaintiff's right of possession or subversive of his right of property. Omaha & Grant Smelting & Refining Co. vs. Tabor, 21 Pac. 925, 930.

"Conversion is the act of assuming the general right of dominion and control of a thing belonging to another, whch is usually exercised by the owner thereof. It 'is defined to be an unauthorized act which deprives another of his property permanently or for . an indefinite time'. A wrongful intent is not an essential element of a conversion. It is enough that the rightful owner has been deprived of

his property by some unauthorized act by another assuming dominion or control over it. Pease vs. Smith, 61 N. Y. 477, 481; Industrial & General Trust vs. Tod, 63 N. E. 285, 288, 170 N. Y. 233 (citing Boyce vs. Brockway, 31 N. Y. 490); Mohr vs. Langan, 63 S. W. 409, 416, 162 Mo. 474, 85 Am. St. Rep. 503."

In the case of Bank of Commerce of Ralston vs. Gashill, 145 Pac. 1131, it was said:

"An absolute sale, to the exclusion of the rights of a chattel mortgagee, by a mortgagor, who, under the terms of the mortgage, remains in possession of the chattels, works a conversion thereof, for which the mortgagee may maintain an action for conversion without previous demand."

See also Nunn vs. Padgitt Bros., 161 S. W. (Texas) 921.

Under the facts already noted, it is of no consequence that plaintiff was apprised of Hamilton's repossession, or even that plaintiff knew that the car, before its final disappearance, was stored in the garage of the Lapps Motor Company. George S. Clarke, Manager and Vice-President of the plaintiff company, when asked at the trial of this case whether he or any other officer or person connected with the company had authorized or knew of the sale of the car by Hamilton or others, or had released Patton or authorized his release from his obligation under the notes or chattel mortgage, answers, "Positively not". This witness' testimony, while he was under cross-examination, is given without evasion or qualifications of any sort, and fairly indicates that plaintiff, in the light of previous relations had with Hamilton, could not be justly charged with reasons for believing that Hamilton's possession of the Patton car was cause for suspicion justifying investigation as to its

whereabouts.·· Clarke testifies, in part, as follows:

"Q. Did you expect the Hamilton Motor Corporation to keep the Patton car in its establishment forever if Patton continued· to fail to meet his notes?

"A. No.

"Q. Is it not a fact that you realized that the Hamilton Motor Corporation, being secondarily liable on the Patton notes—if Patton continued to fail to pay these notes—would make some effort to reduce the amount of its liability by endeavoring to find some purchaser for this Patton car?

"A· I did, naturally, and expected them to dispose of the car after they had made good to us under their contract. That was none of my business what they did with it. All I was interested in was collecting the notes which the Automobile Finance & Securities Company held.

"Q. As a matter of fact, your company would have had no objection to the Hamilton Motor Corporation finding a purchaser for the Patton car, if the Hamilton Motor Corporation, before actually making the sale, had submitted same for approval to the Automobile Finance & Securities Company and had satisfied the mortgage of the Automobile Finance & Securities Company on the car, either out of the proceeds of the sale or out of its own funds, before the car was actually delivered to the new purchaser. That is a fact, is it not?

"A. We would not have cared what happened to the car if we got our money first or obtained a satisfactory promise of payment.

"Q. Did it not actually happen, in other cases where the Hamilton Motor Corporation obtained possession of cars from purchasers delinquent as Patton was, that the Hamilton Motor Corporation subsequently negotiated the sale of these cars with the approval of the Automobile Finance & Securities Company and satisfied the mortgages on the cars due the Automobile Finance & Securities Company out of the proceeds of the sales or otherwise, at or before the time when the sales were consummated?

·"A. Yes.

"Q. And is it not· also a fact that· your company would have had no objection to the Hamilton Motor Corporation negotiating a sale of the Patton car, if that· corporation, before consummating the sale, had informed your corporation of the facts and at the time of the consummation of the sale had procured the cancellation of the chattel mortgage on the Patton car by satisfying same out of the proceeds of the sale or otherwise?

"A. Yes.

"Q. Is it not a fact that that was what you expected that the Hamilton Motor Corporation would do eventually after·you became aware of the fact it had obtained possession of the car?

"A. The only definite expectation I had was· that the Hamilton Motor Corporation would make good on their contract and pay their notes.

"Q. Did you not also expect the way in which the Hamilton Motor Corporation would make good on its contract· in the case of the ·Patton car was the manner which I have described in my previous question?

"A. Not necessarily. They might have made good by paying up the notes. They did pay two of them, I believe, ·in order to partially satisfy us and prevent our formally seizing the car or tendering it to them under our contract and demanding full amount of the loan with costs, etc."

Patton's surrender of the car into Hamilton's possession with instructions to sell it was the act which constituted Hamilton the agent of Patton, the mortgage creditor, and was the direct and initial act of conversion which caused the sale, although made by Hamilton, to be imputed to Patton, his principal.

What Hamilton has to say about the transaction here involved, is evidence to which this court can give little, if any, consideration. His affidavit, taken prior

to the filing of this suit, is to the effect that the car was turned over to him by Patton, "to be sold by affiant for account of said Patton". And "that affiant acted in this transaction as agent of said Clarence E. Patton". Confronted with this sworn statement when examined under depositions taken on behalf of plaintiff, Hamilton was asked, "Are the facts set forth in said affidavit true and correct?" To this question, he answered:

"The facts contained in said affidavit are true and correct according to the construction put on the case by the attorneys for the Automobile Finance & Securities Company. I do not know whether I acted as agent for said Patton, or for the Automobile Finance & Securities Company in this transaction."

* * *

"There is a question in my mind as to whether the car was turned over to me for the account of Patton or the account of the Automobile Finance & Securities Company."

While again examined, under earlier depositions, he swears positively that "at request of the Automobile Finance & Securities Company, the car was repossessed for account of the Automobile Finance & Securities Company". This statement is obviously untrue, if any reliance is to be placed in the testimony of Clarke, who denies that any authority was ever given Hamilton to sell the car for account of the company. In the light of Hamilton's testimony just noted, the court has little difficulty in determining which of these statements are true.

There is nothing in the record from which the slightest inference can be drawn that plaintiff ever authorized the sale of its mortgage security by Hamilton or others.

Concluding, as we have already done, that the clearest relationship of principal and agent has been established between Patton and Hamilton, it follows that the sale by the latter was Patton's own direct act of conversion, and resulted in the denial to plaintiff of its chattel mortgage rights over the security thus sold.

Our view of the case being that liability on the bond has arisen from the direct act of conversion, attributed to Patton, the purchaser of the car, by his abandonment thereof, as well as by his authority improperly given for its sale, the question of his connivance with Hamilton is pretermitted.

Counsel for appellee has argued before this court that the extent of liability, if any there be, is limited to the value of the security, that is to say, the value of the automobile at the time it was sold. We find no merit in this contention. The language of the bond is that the defendant, as "surety", shall pay "such direct pecuniary loss as the obligee may sustain" by being deprived of the security of any motor vehicle listed in any schedule made part of the bond. A mere reading of the preamble which captions the bond and which relates to the chattel mortgage notes, and hence, to every stipulation contained in the notes, and the further consideration of paragraph 4 of the bond, all of which has been heretofore noted, renders discussions unnecessary as to the correctness of the quantum allowed.

The judgment of the trial court is, in every respect, correct, and is therefore affirmed.