MEISEL TIRE Co., INC., Plaintiff, *v.* ANTHONY RALPH, Doing Business under the Assumed Name and Style of " STANDARD MOTOR SALES," Defendant.

City Court of Rochester, Civil Branch, November 13, 1937.

*A. E. Rosenberg*, for the plaintiff.

*MacFarlane & Harris*, for the defendant.

TOMPKINS, J. The plaintiff sues the defendant for converting an automobile on which it holds a chattel mortgage.

The case is submitted on a stipulation of the facts. It appears therefrom that the plaintiff is the holder of a chattel mortgage made by one Weaver on said automobile, and providing the holder should be entitled to immediate possession thereof on default in payment; that the mortgagor, Weaver, having bought the automobile on a conditional contract of sale, sold it, after the mortgage thereon, to the defendant; that the defendant, without actual knowledge of the chattel mortgage, resold the car for an unspecified amount; that the plaintiff, there being a default on its mortgage, demanded the car from the defendant *after* its resale by him; that the defendant, pursuant to his agreement of purchase made with the mortgagor, Weaver, paid the holder of the conditional sales contract the balance due thereon, being " over $50.00." The contract of conditional sale was properly filed.

The interest of Weaver in the automobile under a conditional contract of sale was the proper subject for a valid chattel mortgage. (Pers. Prop. Law, § 73; *Friedman* v. *Phillips,* 84 App. Div. 179.)

The chattel mortgage was made December 14, 1936, and was filed January 4, 1937. The defendant bought the mortgaged car January 20, 1937, without actual knowledge of the mortgage. The defendant now urges that the chattel mortgage, by remaining unfiled for three weeks, was void. (Lien Law, § 230.)

The object of filing a chattel mortgage is to apprise those who already are or who are about to become creditors of the mortgagor and to warn those who thereafter may acquire an interest, by lien or purchase, in the mortgaged property. It is to advise the creditor, present or prospective, that he may, if the former, protect his present rights; if the latter, that the basis of credit is depleted. It is to warn the prospective purchaser or mortgagee that the title to the chattel is incumbered.

Section 230 of the Lien Law does not say when the mortgage must be filed. As to creditors, the courts have said within a reasonable time. (*Tooker* v. *Siegel-Cooper Co.,* 194 N. Y. 442, 447.) As to subsequent purchasers, if they have actual knowledge at the time of the purchase, filing is unnecessary. (*Briggs* v. *Oliver,* 68 N. Y. 336, 338.) With actual knowledge, they are not purchasers in good faith. (*Lewis* v. *Palmer,* 28 N. Y. 271, 278.) Warning to them who know is superfluous.

Filing is constructive notice. Being a source of information, it is as efficient as knowledge. If the mortgage is filed before purchase the buyer is warned and the object of the statute is fulfilled. That days or weeks elapse between the making and the filing does not lessen the warning to the subsequent purchaser. " Subsequent " as used in the statute refers to the filing, not to the making. The mortgage in question is valid as against the defendant who purchased the automobile two weeks subsequent to the filing thereof. He was not misled by the delay.

The defendant purchased the automobile without actual knowledge of the chattel mortgage and resold it likewise ignorant of its existence, and prior to plaintiff's demand on him for possession. Did the defendant, thus acting in good faith and without conscious wrong, commit a tort for which he may be imprisoned? He is sued in conversion. A body execution follows an unpaid judgment in conversion. Ordinarily, imprisonment presupposes a willful act which is wrong. The liability of an automobile owner for the negligence of his gratuitous bailee under section 59 of the Vehicle and Traffic Law is an exception. This,

however, results from legislative omnipotence, not from the wisdom of the courts in developing the common law. As a proposition *de novo*, to imprison a person who, having bought an automobile without knowledge of a mortgagee's lien thereon, and who, moved by a charitable impulse and believing he has absolute title thereto, gives it to an orphan asylum, to imprison such a person because of his inability to pay a judgment of $500 for its value, would shock the conscience. We would say he should be held for money had and received. The filing gave him constructive notice. A property judgment would be the just penalty for his failure to examine the records. But to imprison one who did no conscious wrong does not square with our sense of justice. The owner of the property right may still follow the property and reclaim it. These remedies are just and ample.

The courts, however, in actions for trover, early went astray. They held that the intent of one who sells the property of another, although ignorant of the latter's claim, is immaterial. In *Everett* v. *Coffin* (6 Wend. 603), an action in trover, the court said (at p. 609): " It is no defence * * * under the circumstances disclosed in this case, that the defendants, in disposing of the plaintiff's property, acted without fraud, and in ignorance of the plaintiff's rights." In *Boyce* v. *Brockway* (31 N. Y. 490) the court declared (at p. 493): " A wrongful intent is not an essential element of the conversion.". Likewise in *Pease* v. *Smith* (61 N. Y. 477), a conversion action, the court again announced: " Knowledge, and intent on the part of the defendants, are not material." The last case is cited with approval in *MacDonnell* v. *Buffalo Loan, T. & S. D. Co.* (193 N. Y. 92, at p. 101). Finally, the Court of Appeals, in *United States Fidelity & Guaranty Co.* v. *Newburger* (263 N. Y. 16, 22), held that the defendant, who, without knowledge that a certificate had been stolen, surrendered it for cancellation and accepted a new certificate in its place, was thereby guilty of conversion. The law as thus announced and applied is binding upon the courts of this State, even though it works injustice.

In the usual type of action in conversion there is a willful wrong. Either the taking itself is wrongful, in which case a demand is unnecessary, or there is a wrongful refusal to surrender the property to the rightful owner on his demand. It would seem that the theory adopted for holding the innocent purchaser who disposes of another's property in good faith and without knowledge of a third party's claim is, in the language of the court in *Pease* v. *Smith* (*supra*, p. 480), that " The assumed act of ownership was *inconsistent* with the dominion of the plaintiffs, and this is the

essence of a conversion." We had supposed " the essence " to be the willful trespass upon or the denial of the true owners' right to possession of the property.

The courts, however, in some of the decisions prior to that of *Pease* v. *Smith* (*supra*) did not recognize the law holding the innocent guilty, as there announced. In *Kelsey* v. *Griswold* (6 Barb. 436) the head note in part reads: " Where a person lawfully coming into the possession of the property of another has parted with the same, previous to the making of a demand by the owner, the remedy of the owner, against such person, is not by an action of trover, but by a special action on the case, or in assumpsit."

The court stated (at p. 444): " Otherwise a party might be made liable in trover when he had never been guilty of a conversion, and that which otherwise would be an action of assumpsit might be converted into a tort, at the pleasure of the claimant, and without any fault on the part of the other party."

In *Hawkins* v. *Hoffman* (6 Hill, 586) and *Whitney* v. *Slauson* (30 Barb. 276) the court makes a similar pronouncement, while in *Gillet* v. *Roberts* (57 N. Y. 28), just prior to the case of *Pease* v. *Smith*, Judge EARL concluded his opinion with this sentence: " The rule is a reasonable and just one, that an innocent purchaser of personal property from a wrong-doer shall first be informed of the defect in his title, and have an opportunity to deliver the property to the true owner, before he shall be made liable as a *tort feasor* for a wrongful conversion."

The learned presiding judge of the Fourth Department, in considering the case of *Goebel* v. *Clark* (242 App. Div. 408), where the defendant resold the property in which the plaintiff had a reversionary claim, without knowledge thereof, evidently had doubts as to the propriety of applying the law as the same has been laid down, saying (at p. 411): " The facts are sufficient in our judgment to establish a cause of action, though not strictly in conversion, against the defendant * * *. In our judgment, therefore, a cause of action was established for injury to the reversionary title of the plaintiff." The words of Judge EARL, " that an innocent purchaser * * * from a wrong-goer shall first be informed of the defect in his title * * * before he shall be made liable as a *tort feasor*," and those of the court in *Kelsey* v. *Griswold* (*supra*), " and that which otherwise would be an action of assumpsit might be converted into a tort, at the pleasure of the claimant, and without any fault on the part of the other party," would seem to so square with our sense of fairness that they should still point the way leading to the goal of justice.

It would seem that where an erroneous principle has insidiously crept into the law, the courts, instead of embalming the error by continued citation with implied approval, should rather acknowledge fallibility, admit the fault, and, by unmistakable disapproval, eradicate the error. This, however, is for the appellate courts. This court is bound by the law as they have laid it down.

There is, however, a further phase to be considered. The defendant, pursuant to his purchase agreement with Weaver, had paid the conditional seller's claim on the automobile of " over $50.00." By this payment the defendant became subrogated to the conditional vendor's rights under the conditional sales agreement. (*Zimmermann* v. *Heller*, 91 Misc. 273; affd., 173 App. Div. 1003.) These possessory rights were superior to the plaintiff's lien under its mortgage. Therefore, plaintiff's demand, unaccompanied by tender of the amount defendant paid the holder of the conditional sales contract, was properly refused.

While the defendant, by paying off the original vendor, acquired rights in the automobile, measured by the amount he paid, superior to the defendant's mortgage lien thereon, yet he could not cut off plaintiff's lien by his resale of the mortgaged automobile. He still is responsible to the plaintiff for the amount of its mortgage lien to the extent of the automobile's value (if his resale was a conversion), or the amount he received on the resale (if it was not a conversion) over the amount he paid the original vendor. The defendant holds the surplus, if any, for the use of the plaintiff. Neither the amount the defendant paid to the holder of the conditional sales contract, nor the value of the automobile at the time he resold it, nor the amount he received on the resale, is included in the stipulation of facts.

The complaint must be dismissed.