KELSEY *vs.* GRISWOLD.

Where there has been no actual conversion of property, a demand and refusal can not lay a foundation for the action of trover; unless at the time of the refusal the party has the property demanded in his possession, so that he can comply with the demand.

Where a person lawfully coming into the possession of the property of another has parted with the same, previous to the making of a demand by the owner, the remedy of the owner, against such person, is not by an action of trover, but by a special action on the case, or in assumpsit.

The statute of limitations begins to run against an action of trover, from the time of the conversion.

Promissory notes, for which an action of trover was brought, were delivered to the defendant as collateral security for an advance of exchange, on the 9th of March, 1837. On the 23d of August, 1838, after he had been repaid that advance, but while he still had the notes in his hands, a demand was made upon him, and he refused to deliver them up. *Held* that under the circumstances, this was a conversion, and that an action of trover must be brought within six years from the time of such conversion.

*Held also*, that after the statute of limitations has commenced running against such an action, by a demand and refusal, the case will not be taken out of the statute by a second demand and refusal made within six years, but after the defendant has parted with the property.

MOTION to set aside report of referee. This was an action of trover. The declaration stated that on the first day of December, 1844, the plaintiff was possessed of three certain promissory notes, one of which was made by Donner & Co., dated 15th April, 1837, for $375,82 payable fifteen months after date, to the order of B. F. Lee & Co., another of which said notes was made by Donner & Co., dated 15th April, 1837, for $375,82, payable twenty-one months after date, to the order of B. F. Lee & Co., and the other of which said notes was made by William Cronkhite, dated 7th September, 1837, for $545,28, payable twelve months after date, to the order of B. F. Lee & Co. That the said three notes were severally duly indorsed by the said B. F. Lee & Co.; that the said plaintiff casually lost said three notes on the said 1st December, 1844, and that on the twenty-

fifth December, 1844, the said three notes came to the possession of the said defendant by finding. That the said defendant had not delivered said notes to the plaintiff, although often requested so to do, and that on the 26th December, 1844, be converted the same to his own use. The pleas were the general issue and statute of limitations. The cause, by the consent of the attorneys for the respective parties, was referred by rule of court to Daniel B. Tallmadge, Esq., as sole referee therein. Upon the hearing of the cause before the referee, the following statement of facts was agreed upon between the parties.

On the 9th day of March, 1837, Benjamin F. Lee, James P. Cronkhite and Henry Weston, composing the firm of B. F. Lee & Co., purchased of George Griswold, direct or through Shipman, Corning & Co., £3000 sterling of exchange at 14½ per cent, 90 days and 7 per cent interest, amounting to $15,508,80. In payment of this exchange, B. F. Lee & Co. gave their notes to George Griswold, as follows, viz : One note due the 29th of May, 1837, another due on the 8th of June, 1837, and another due on the 18th of the same month, for $5169,60 each. To secure the payment of these notes, on or about the 9th of March, 1837, B. F. Lee & Co. gave George Griswold sundry notes as collateral, and among others the notes in question in this suit. As the collaterals fell due and were paid, or any payment made on them, the money was applied to the payment of B. F. Lee & Co.'s notes so given to Griswold, and new notes were given by B. F. Lee & Co. for the balances due, after applying the cash so received from the collateral notes, and the last of the notes given to George Griswold by B. F. Lee & Co. for such balances, fell due on 23d August, 1838, viz : One note for $208,06, and another one for $1716. On the 23d of August, 1838, Griswold had in cash in his hands, received from the collateral notes, $2092,26, being $168,20 more than B. F. Lee & Co. owed him for the exchange so bought as aforesaid. There were, also, remaining in the hands of Griswold on the 23d of August, 1838, sundry notes of the collaterals, surplus, after paying him in full, and among them were the three notes in question ; and B. F. Lee & Co. then, on the 23d day of August, 1838, demanded of Griswold

all the notes deposited with said Griswold as collateral for the payment of the notes of B. F. Lee & Co., given for exchange aforesaid and among others demanded the three notes in question, which said collateral notes Griswold refused to deliver to B. F. Lee & Co., claiming that he the said Griswold had a lien on them for the amount of the indebtedness to him of B. F. Lee & Co., on two several promissory notes then and still held and owned by said Griswold, one of which notes was for the sum of $232,15, dated March 30th, 1838, and due the 17th of May, 1838, and the other was for the sum of $2095,32, dated March 30th, 1838, and due June 1st, 1838, of which said notes B. F. Lee & Co. were the makers, and the same were indorsed by Shipman, Corning & Co., who passed them, or the originals, of which they were part renewals, to said Griswold, on or about the 19th day of April, 1837, for exchange purchased of said Griswold by Shipman, Corning & Co. The original note passed by said Shipman, Corning & Co., to Griswold, was for the sum of $3101,52, which became due the 22d of June, 1837, when a partial payment was made by B. F. Lee & Co. to said Griswold, and a new note was given for the balance, and such partial payments and renewals were continued down to the 30th of March, 1838, during all which time said Griswold was the holder and owner of the notes. On the 30th March, 1838, instead of a partial payment being made, a short note was given by B. F. Lee & Co., payable to the order of Shipman, Corning & Co. for $232,15, which note B. F. Lee & Co. promised to pay at maturity, and at the same time of giving the above note, they gave another for $2095,32 at sixty days, that being the usual time of the renewals to be given. Said two notes being equal in amount to a note of B. F. Lee & Co., which became due on or about the 30th of March, 1838, of which they were the renewals. Both of said notes were protested when they became due, and have remained unpaid in the hands of George Griswold to the present time, and said Griswold claimed that the collaterals in his hands should be applied to the payment of the two said notes of B. F. Lee & Co. The two notes of Donner & Co. were paid to Griswold at the time of their maturity, and the

note of Cronkhite was of no value, but was cancelled on payment by his father of $75, shortly after it became due, which sums being the amount received upon the three notes in controversy, were passed to the credit of B. F. Lee & Co., and a large balance still remained due from B. F. Lee & Co. to George Griswold. Two of the members of the firm of B. F. Lee & Co., viz. Benjamin F. Lee and James P. Cronkhite each filed their separate petitions for a discharge under the late United States bankrupt law, and B. F. Lee was, on his own petition, on the fourth day of March, 1842, declared a bankrupt, and received his discharge on the first day of July, 1842, and said James P. Cronkhite was on his own petition, declared a bankrupt on the 20th of May, 1842, and received his discharge on the 20th of December, 1842, and Henry Weston, the other member of the firm was declared a bankrupt in the state of Indiana, on the first day of July, 1842, and in the same year was duly discharged. The notes in question were inventoried in their schedule in bankruptcy, by Lee & Cronkhite, as the property of B. F. Lee & Co., and the general assignee in bankruptcy for the southern district of New-York, on the 20th of December, 1842, sold at public auction to Humphrey B. Dunham, all Benjamin F. Lee's and James P. Cronkhite's interest in thirty-three notes, including the three notes in question, amounting in the aggregate to the sum of $25,000 for the sum of $93,50, that the interest of Lee & Cronkhite in the thirty-three notes was sold separately, but the interest of each in all the thirty-three notes was sold at one time, at one bidding. The interest of B. F. Lee in the thirty-three notes was sold for $50, and the interest of Cronkhite for $42,50. Their interest in each note was not sold separately, but the interest of each in the whole 33 notes was sold at one time. The notes were sold in a lump. On the 8th of March, 1843, Humphrey B. Dunham sold the same to John B. Coles, jr., and on the fourth of April, 1843, Coles sold the same to George H. Kelsey, the plaintiff. Benjamin F. Lee, Henry Weston and James P. Cronkhite were general co-partners in trade, entitled to the profits and bearing the losses of the business proportionally. B. F. Lee furnished all

Kelsey *v.* Griswold.

the capital, and no profits were made and the firm was largely insolvent. On the 26th of December, 1844, the plaintiff sent a written demand of the notes to the defendant, which demand the defendant refused, saying that the matter was in the hands of Joseph W. Allsop.

The referee reported in favor of the defendant.

*E. Coles,* for the plaintiff.

*M. S. Bidwell,* for the defendant.

*By the Court,* EDMONDS, J. The statute of limitations begins to run from the time the cause of action accrues. (2 *R. S.* 224, § 18.) In trover the cause of action accrues upon the conversion. The *trouver* or finding is immaterial. It is the conversion which is the gist of the action. A conversion is the wrongful assumption of property in, or right of disposing of, goods, such as discounting a lost bill after notice; (4 *Taunt.* 799 ;) or taking the property of another by assignment from one who had no authority to dispose of it ; (6 *East,* 538 ;) or denying goods to him who has a right to demand them. (6 *Mod.* 212.) The action being founded on a conjunct right of property and possession, any act which denies or is inconsistent with such right is a conversion. (*Bristol* v. *Burt,* 7 *John.* 254.) In such case a demand and refusal are unnecessary. They are necessary only when the wrongdoer became in the first instance lawfully possessed of the goods, and there is no proof of an actual distinct conversion. (2 *Saund.* 47, *e.*)

Demand and refusal are never of themselves a conversion, except perhaps where the wrongdoer has the property actually in his possession at the time. They are merely evidence of a conversion ; not indeed the only evidence ; for an actual conversion may still be proved. But in the absence of such proof, they are evidence enough to entitle the party to recover. (*Baldwin* v. *Cole,* 6 *Mod.* 202. *McCombie* v. *Davis,* 6 *East,* 538. *Hoare* v. *Parker,* 2 *T. R.* 376.)

This rests upon this principle—that if the wrongdoer has sold

Kelsey *v.* Griswold.

or disposed of the property such sale is the conversion, and that may be evidenced either by proof of the sale or by proof of demand and refusal; but where he still retains the property in his possession *non constat*, he may retain it for the rightful owner. But when, on demand, he refuses to deliver to such owner, he at that moment assumes to exercise the right of property in himself, and thus converts it to his own use.

Hence in the action of trover, when the inquiry is at what time the statute of limitation begins to run, reference is had to the time of the conversion, and never to the time of a demand and refusal; unless such refusal be of itself a conversion, or the demand and refusal is the only evidence. In the latter case, the time of the demand and refusal is the criterion, simply because there is no other evidence of a conversion, and no other means of ascertaining when a conversion did take place.

In conformity with these principles the authorities are, that the statute begins to run at the time of the conversion. (2 *Cowen's Tr.* 208, *citing* 7 *Mod.* 99.) *Read* v. *Markle,* (3 *John.* 523,) was where property was seized on an execution which was afterwards set aside. The court held that the statute began to run from the time of the seizure, because the execution was void. In *Granger* v. *George,* (5 *Barn. & Cress.* 149,) the action was trover for a box of papers placed in the defendant's custody in 1816, and as he had come rightfully into the possession of them, unless there was proof of an actual conversion, a demand and refusal was necessary. Accordingly, in 1824, they were demanded of him, but on proof being given that in 1818, more than six years before suit brought, he had disposed of them by delivering them over to certain other persons, the plea of the statute was held to be a good bar, notwithstanding the proof that the plaintiff did not know of the conversion in 1818 until his demand in 1824; Abbott, C. J. holding, in terms, that the act began to run from the time of the act done by the defendant; and Bayley, J. remarking that the goods having been out of the defendant's possession more than six years before suit brought, it was manifest that he could not have converted them within that period. (*See also Lovell* v. *Martin,* 4

Kelsey v. Griswold.

*Taunt.* 799 ; *Woodsworth* v. *Harley*, 1 *B. & Ad.* 391 ; 1 *Chit. Pl. 9th Am. ed.* 499, *n. k.* ; *Ball. on Lim.* 97 ; *Horesfield* v. *Cort, Addis. Rep.* 152 ; *White* v. *Edgman*, 1 *Tenn. R.* 19.)

Testing the case under consideration by these principles, it is manifest that the cause of action was barred by the statute. The notes for which the suit was brought were delivered to the defendant as collateral security for an advance of exchange on the 9th of March, 1837. On the 23d of August, 1838, he had been repaid that advance, but he still had these notes in his hands. At that time a demand was made upon him, and he refused to deliver them up. That was, under the circumstances, a conversion—not merely evidence of it—but an absolute conversion of them to his own use. This suit was commenced February 1, 1845, nearly seven years afterwards.

But again ; the two notes against Donner were collected by the defendant at the time they became due, that is 15 to 18 January, 1839, and the note against Cronkhite was compromised and given up by the defendant about the time it became due, that is, in September, 1838. At these times, it was that the defendant made an absolute disposition of the notes, and from that time they were no longer in his possession. These events also occurred more than six years before the commencement of the suit.

Now if the defendant had authority to collect the notes, he can not be sued in trover for them, but must be sued for money had and received ; for he has done nothing with them which he was not authorized to do. (*Palmer* v. *Jarmain*, 2 *M. & W.* 282. *Stierneld* v. *Holden*, 4 *B. & C.* 5 ; *S. C.* 6 *D. & R.* 17.) But if his authority to collect them had expired by reason of the payment of the debt for which they had been pledged, and he still received the money upon them and gave them up, that was a conversion of them. (*Alsager* v. *Close*, 10 *M. & W.* 576. *Atkins* v. *Owen*, 4 *A. & E.* 819 ; *S. C.* 6 *N. & M.* 309.) So that whether the conversion was constituted by the demand and refusal while the defendant had the notes in his possession and could give them up, or by his unauthorized collection of them, in either event the cause of action accrued

Kelsey *v.* Griswold.

more than six years before suit brought and is barred by the statute.

It is insisted, however, for the plaintiff, that the cause of action accrued at the time of the second demand and refusal in December, 1844. To this claim it seems to me there are several insuperable objections.

1. If the plaintiff is right, then is the statute of limitations virtually repealed, so far as the action of trover is concerned. For no matter though the cause of action had accrued more than six years back, either by actual conversion or by a demand and refusal, the statute would begin to run from a second demand; and if a second demand and refusal have this power of taking a case out of the statute, a third and fourth must have the same power, and so on until the party shall choose to let six years elapse between any two of the numerous demands he may please to make.

2. The second objection is that where a party, at the time of his refusal, has it not in his power to deliver up the goods demanded, the refusal is no evidence of conversion. Thus where he has deposited the paper demanded with his attorney, who has a lien upon it, (*Smith* v. *Young*, 1 *Camp.* 439,) or a carrier or a wharfinger has lost the goods, (*Anon.* 2 *Salk.* 655; *Ross* v. *Johnson*, 5 *Burr.* 2825; *Severin* v. *Keppell*, 4 *Esp.* 157; *Dewall* v. *Moxon*, 1 *Taunt.* 391;) or he has previously parted with them by sale, (*Edwards* v. *Hooper*, 11 *M. & W.* 363;) or where the property, left at livery, had been seized on attachment and was at the time in the custody of the law, (*Verrall* v. *Robinson*, 2 *C. M. & R.* 495.)

From these cases it would seem that the action of trover will not lie unless the act of parting with the possession shall have laid a proper foundation for it. Or, in other words, if there has been no actual conversion, that no demand and refusal can lay a foundation for the action of trover, unless the party has the property demanded in his possession, at the time of the refusal, so that he can comply with the demand; and the party aggrieved must resort to his remedy by a special action on the case, or in assumpsit, as the case may be.

Kelsey *v.* Griswold.

And this may be so ; for otherwise a party might be made liable in trover when he had never been guilty of a conversion, and that which would otherwise be an action of assumpsit might be converted into a tort, at the pleasure of the claimant, and without any fault on the part of the other party, and without his having it in his power, by any act he could perform, to screen himself from the action.

These considerations are eminently applicable to the case before us. For if the defendant had a right to collect these notes, the action of assumpsit, in which he might be liable to his original debtor and in which he might set off his demands, could at the pleasure of the present plaintiff, be converted into a tort and the defendant thus be deprived of his set-off. If he had no right to collect them, and yet did so, long ago, and while the notes in fact belonged to his debtor, who by his long silence may well be considered as having acquiesced in that mode of paying his debt, an act which the statute of limitations barred before the plaintiff had any interest in the matter, may be revived at the plaintiff's pleasure, and the statute of repose thus be avoided after it had actually attached.

I have confined my examination to only one of the points raised before the referee, because I have regarded it as decisive of the case. If I were to go any farther I might be met by a doubt whether the plaintiff did in fact acquire any title to these notes which would enable him to sue in his own name, and whether the third partner of the firm of Lee & Co. whose interest he did not acquire, was not a necessary party ; and the farther doubt whether an action of tort passed to the assignee in bankruptcy in such manner as to authorize him to convey it to this plaintiff. I do not, however, attempt to solve these doubts ; as the case must be disposed of on the other point, which I have considered at large.

The motion to set aside the report of the referee must be denied with costs.