THOMAS GANLEY, as Administrator, etc., Respondent, v. THE TROY CITY NATIONAL BANK, Appellant.

M., plaintiff's intestate, left with defendant, for safe-keeping, two United States treasury notes, taking a receipt therefor, which stated that they were to be delivered on surrender of the receipt. On August 15, 1866, the day the notes matured, defendant, at the request of plaintiff's husband, sold the notes and paid the proceeds ($1,050) to him. M. was married prior to 1848. Plaintiff presented the receipt and demanded the bonds in 1879, and upon refusal to deliver, brought this action for a breach of the contract expressed in the receipt. *Held*, that as M. had possession of the notes, and defendant dealt with her as owner, in the absence of evidence that they belonged to her husband or came to M. in such a manner as to vest the title in him, it was to be inferred they were her separate property, and hence it could not be held that her husband had the right to control them, nor could it be inferred that the sale and payment was with her knowledge or consent; that as M. died leaving children, her claim against defendant did not as at common law pass to her husband, but under the act of 1867 (§ 11, chap. 782, Laws of 1867), he was entitled only to a distributive share thereof ; and that it was no defense to the action that the husband, if living, would be entitled to a portion of the money if a recovery was had.

Also *held*, that the action was not barred by the statute of limitations as the cause of action did not accrue until demand.

*It seems* that had the action been for the conversion of the bonds, it would have been barred.

The distinction between the two classes of actions pointed out.

M.'s husband about the time he received the proceeds of the notes, purchased certain real estate for $1,200, on which he erected a dwelling soon after. He and his wife lived in the house until January, 1869, when she died, he continuing to live there with their children until April, 1874, when he died intestate, seized of said real estate, which passed to their children; its value then exceeded the value of the notes. *Held*, that conceding the proceeds of the notes were invested in the land so purchased, although the heirs and next of kin of M. were benefited by the investment, this

furnished no defense to the action, as they took the land by inheritance from their father; and plaintiff was entitled to enforce the claim against defendant.

(Argued March 4, 1885 ; decided March 24, 1885.)

20 *N. Y. Dig. 541 affirmed*

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made December 27, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought to recover for the breach of an alleged contract between Margaret Ganley, plaintiff's intestate and defendant, which, with the material facts. is substantially set forth in the opinion.

*R. A. Parmenter* for appellant. The contract evidenced by the receipt of April 3, 1865, was one of bailment. The bank then became a gratuitous bailee, and, therefore, not responsible to the bailor without some proof of gross neglect on its part. (*Beardsley* v. *Richardson*, 11 Wend. 25 ; *Edson* v. *Weston*, 7 Cow. 278 ; *First Nat'l Bk.* v. *Ocean Nat'l Bk.*, 60 N. Y. 278 ; *Patterson* v. *Syracuse Nat'l Bk.*, 80 id. 82 ; *Schermer* v. *Newrath*, 39 Am. Rep. 400.) A receipt or bill of lading does not always operate as an estoppel on the bailee. In other words, the admission is not conclusive. (*Bates* v. *Stanton*, 1 Duer, 85 ; *Marvin* v. *Elwood*, 11 Paige, 376 ; *Western Trans. Co.* v. *Barber*, 56 N. Y. 552.) Upon the evidence and findings of fact, the payment to Dominick Ganley discharged the bank from all liability to the bailor. (*Westervelt* v. *Gregg*, 12 N. Y. 202 ; *Ryder* v. *Hulse*, 24 id. 372 ; *Barnes* v. *Underwood*, 47 id. 351 ; *Wood* v. *Wood*, 83 id. 579 ; *Birbeck* v. *Ackroyd*, 74 id. 356.) The cause of action was barred by the statute of limitations when the suit was commenced, and the plea of the statute is available to the defendant. (*Payne* v. *Slate*, 39 Barb. 637 ; *Sweet* v. *Irish*, 36 id. 469 ; *Bates* v. *First Nat'l Bk.*, 23 Hun, 420 ; *Boughton* v. *Flint*, 74 N. Y. 476 ;

*Munger* v. *Albany City Nat'l Bk.*, 85 id. 587; 1 Add. on Cont., § 407; *Salt Springs Nat'l Bk.* v. *Wheeler*, 48 N. Y. 492.) When this action was commenced the cause of action was barred by the statute of limitations. (*Bucklin* v. *Ford*, 51 Barb. 393; *Sanford* v. *Sanford*, 62 N. Y. 553; Angell on Lim., §§ 136, 137; *Ranken* v. *Woodworth*, 3 Penn. 48; *Granger* v. *George*, 11 Eng. Com. Law, 185; *Devereux* v. *Bartlay*, 2 Barn. & Ald. 702; *Kelsey* v. *Griswold*, 6 Barb. 436; *Esmay* v. *Fanning*, 9 id. 176; *Packard* v. *Gitman*, 4 Wend. 613; *Coykendall* v. *Eaton*, 55 Barb. 193; 1 Add. on Cont., § 408; *Wilkinson* v. *Verity*, L. R., 6 C. P. 206; 40 L. J. Ch. 140; *Nichols* v. *Michael*, 23 N. Y. 268; *Barnett* v. *Selling*, 70 N. Y. 494; *Crossfield* v. *Such*, 8 Exch. 825; L. J. Exch. 325; Jacobs' Fisher's Dig., vol. 3, p. 4120.) If, however, the return of the receipt, and an actual demand of the treasury notes were necessary to create the cause of action in the suit as brought, such return and demand should have been made within seven years and a half after the deposit of the notes in the bank for safe-keeping, and within six years had Mrs. Ganley lived so long. (*Lafarge* v. *James*, 9 Penn. St. 410; *P. & C. R. R. Co.* v. *Byers*, 32 id. 22; *Morrison* v. *Mullen*, 34 id. 12; *Codman* v. *Rogers*, 10 Pick. 112; *Kertlihe* v. *Foster*, 22 Ohio St. 27; *Palmer* v. *Palmer*, 36 Mich. 487; 24 Am. Rep. 605; *Herrick* v. *Wolverton*, 41 N. Y. 581.)

*Edgar L. Fursman* for respondent. Having received the notes of plaintiff's intestate for safe-keeping in accordance with an established custom, the defendant is liable for the act of its officers, whereby they were lost to her estate. (*Pattison* v. *Syracuse Nat. Bk.*, 80 N. Y. 82, 94; *Nat. Bk.* v. *Graham*, 100 U. S. 699.) Dominick Ganley, the husband of Margaret, did not on the death of Margaret become entitled to these notes as husband. (Laws of 1867, chap. 782, § 11; 3 R. S. [7th ed.] 2305, § 79; McClelland's Prob. Prac. 237; *Barnes* v. *Underwood*, 47 N. Y. 351.) It is no answer to the defendant when called upon by the owner to deliver them pursuant to the contract

of bailment to say that they had been delivered to the husband of the bailor. (*Bates* v. *First Nat. Bk.*, 89 N. Y. 286; *Supv'rs of Monroe* v. *Budlong*, 51 Barb. 493.) The cause of action is not barred by the statute of limitations. ( *Wilkinson* v. *Verity*, L. R., 6 C. P. 206 ; *Nat. Bk.* v. *Graham*, 100 U. S. 699, 701; *Hoffman* v. *Van Nostrand*, 42 Barb. 174 ; *Sweet* v. *Irish*, 36 id. 467 ; *Boughton* v. *Flint*, 74 N. Y. 476 ; *Wright* v. *Hamilton*, 21 Am. Dec. 513 ; *Sherrod* v. *Woodward*, 28 id. 714 ; Edw. on Bail., §§ 42, 87 ; Code of Civ. Pro., § 410.)

EARL, J.   On the 3d day of April, 1865, Margaret Ganley, the plaintiff's intestate, left with the defendant, for safe-keeping, two United States 7–30 treasury notes of $500 each, and took a receipt therefor, of which the following is a copy:

"TROY, N. Y., 3*d April*, 1865.

"Received this day of Margaret Ganley for safe-keeping for her account two U. S. 7–30 treasury notes, $500 each, Nos. 166, 338 and 9, to be delivered on surrender of this receipt.
"G. F. SIMS, *Cashier.*"

These notes by their terms matured August 15, 1866, when they ceased to draw interest, and they were redeemed and paid by the United States August 20, 1866.   On the 15th of August, the very day it must be observed on which the notes matured, Dominick Ganley, the husband of Margaret, went to the bank and requested that the notes should be sold and the proceeds paid to him ; and in pursuance of such request the bank sold the notes and on the 17th day of August paid about $1,050, the proceeds of the sale, to Dominick Ganley; and after that time the bank never had possession of the notes. About the date he received the proceeds of the notes from the bank, he paid $1,200 for a vacant lot in Troy, which was conveyed to him by deed bearing date July 25, 1866, but not delivered until some days thereafter.   Soon after, Dominick erected on the lot a brick dwelling-house, and on the 2d

day of October, 1866, he and his wife executed two mort-
gages thereon, one for $2,000 and one for $1,000, which mort-
gages were discharged of record in April, 1873.  Dominick
and Margaret were married before the year 1848 and lived in
the house thus erected with their children until January 6,
1869, when she died intestate, leaving no property except this
claim against the defendant, she never having carried on any
separate trade or business; and Dominick and his children
continued to live in the same house until April 6, 1874, when
he died intestate, seized of the real estate before mentioned,
but leaving no personal property.  The real estate was bought,
paid for and improved by Dominick, and upon his death passed,
by descent, to his children, who were also next of kin and heirs
at law of Margaret, and the value of the real estate exceeded
the value of the notes.  In 1879 the receipt above mentioned
was found, and soon thereafter the plaintiff, Thomas Ganley,
who had been appointed administrator of his mother's estate,
on the 31st day of July, 1879, demanded of the bank the notes
described in the receipt, presenting and offering to surrender
the same, and he was told that there were no such notes in the
possession of the bank.  The cashier who gave the receipt died
before the trial of this action.  There was no evidence showing
when or how Margaret became the owner of the notes.  The
action of the bank in the conversion of the notes and payment
of the proceeds to Dominick was never brought in question,
so far as the evidence shows, until July, 1879, and this action
was commenced on the 7th day of August, 1879.  From these
facts and other facts in the case, the trial judge stated that he
was unable to find as a fact that the sale of the notes and pay-
ment of their proceeds to Dominick were with the knowledge
or consent of Margaret, or were ratified by her during her
life-time; but he found that such acts were done by the bank
in good faith, believing that Dominick was the agent of and
duly authorized to act for his wife; and he found as matter of
law that the cause of action accrued on the 31st day of July,
1879, at the time of the demand made upon the bank, and that
it was not barred by the statute of limitations, and that for the

breach of its contract by the defendant the plaintiff was entitled to recover as damages the sum of $1,000 with interest from the time of the demand; and he ordered judgment for that amount. The defendant appealed to the General Term, and from affirmance there to this court.

We have a very strong conviction upon the facts of this case that the treasury notes were converted by the bank and the proceeds paid to Dominick Ganley by the authority and with the consent of his wife; but the case does not contain all the evidence, and we are concluded by the facts found by the trial judge. It remains, therefore, for us only to examine such questions of law as have been brought to our attention by the learned counsel for the appellant.

It does not appear how or when Margaret Ganley became the owner of these notes; but under the laws in force after 1848, there were several ways in which she could become the owner of personal property, and as she had possession of these notes and delivered them to the bank as owner, and the bank dealt with her as owner, in the absence of any proof that they belonged to her husband, or came to the wife in such a manner as would vest the title to them in him, it must be inferred that they were her separate property; and hence it cannot be held in this case that Dominick, as her husband, had the right to control them.

At the time of her death in 1869, she held this claim against the bank, and it did not, as at common law, pass to her husband, but her estate was regulated by section 11 of chapter 782 of the Laws of 1867, which provided that the husband of any deceased married woman should be entitled to the same distributive share in the personal estate of his wife to which a widow is entitled in the personal estate of her husband by the provisions of the Revised Statutes; and thus if the husband had taken out letters of administration upon his wife's estate, he would have been entitled to one-third of this claim against the bank after paying her debts and the expenses of administration. If any person other than the husband had been appointed her administrator and had sued the bank, it would have

been no defense to such an action that the proceeds of the note had been paid over to the husband, because the administrator would have been entitled to receive the whole of the claim and pay it out in due course of administration. So it is no defense to this action that the proceeds of these treasury notes were paid to the husband, who, if living, might, in the course of administration upon the estate of his wife, have been entitled to receive a portion of the money recovered.

The trial judge did not find that the proceeds were invested in the lot purchased by the husband about the time of their payment to him; but even if that were true, we do not perceive how it furnishes any defense to this action. It is true that the heirs and next of kin of Margaret Ganley took this real estate by descent from her husband, and thus possibly may have been benefited by the investment of the proceeds of the notes in that real estate. But the real estate belonged to their father at his death, and they took it from him by inheritance. If their mother had been living she would not have been obliged to resort to the real estate for payment, but could have prosecuted the bank and left it to its remedy over against her husband or his real estate; and this administrator, the plaintiff, is in the same position. He, representing both creditors, if any, and the next of kin, was not obliged to resort to this real estate for indemnity for the wrong which had been done by the conversion of the notes, but had the right to enforce this claim against the defendant for the purpose of administering upon the estate of the intestate.

We therefore come to the only other defense, that furnished by the statute of limitations. The claim of the defendant is, that as these bonds were converted in 1866, nearly thirteen years before this action was commenced, the cause of action was barred by the statute. If the action had been trover for the conversion of the bonds it would, we think, under the authorities, have been barred. In that case the cause of action would have been complete at the time the notes were sold, and although the sale was unknown to Margaret Ganley the statute would have commenced to run against her for the conversion

from that date. By the sale the wrong was committed and completed, and no demand was necessary to lay the foundation of the action for the conversion against the bank. (Angell on Lim., § 304; *Granger* v. *George*, 5 Barn. & Cres. 149; *Kelsey Griswold*, 6 Barb. 436; *Esmay* v. *Fanning*, 9 id. 176; *Wilkinson* v. *Verity*, L. R., 6 C. P. 206.) In such an action no demand being necessary before the right of action accrues, the statute of limitations commences to run from the time of the conversion and not the time of the subsequent demand. But in all cases like this, the owner of property wrongfully converted has a right also to sue upon the contract expressly made by the parties thereto, or implied by law from the facts and the relation of the parties. Instead of suing for the conversion, then this plaintiff had the right, as he did, to sue for the breach of the contract, and that action did not accrue until a demand. It is universally true that the statute of limitations does not commence to run upon a cause of action upon contract until it has accrued, and that where a demand is necessary before an action can be commenced the statute does not begin to run until after the demand. By the terms of this contract the defendant was bound to keep these treasury notes safe for Mrs. Ganley, and to deliver them up to her upon her demand, on the surrender of the receipt which was given to her. She could not put the defendant in default upon its contract until a demand and an offer to surrender the receipt, and until that time her cause of action did not accrue. In such a case a *tort feasor* cannot allege his own wrong for the purpose of defeating an action upon the contract. In Angell on Limitations (5th ed., § 72), it is said: "An action of assumpsit may not be barred by the statute, when, to an action for a tort upon the same demand, the statute may be pleaded." Again, " where there has been a tortious taking of his property, the injured party may bring trespass or trover, or he may waive both and bring assumpsit for the proceeds, when it shall have been converted into money; and if he choose the latter mode of redress, the *tort feasor* cannot allege his own wrong for the purpose of carrying back the injury to a time which will let in the statute."

(See, also, *Lamb* v. *Clark*, 5 Pick. 193 ; Addison on Contracts, 300.)

In this case the contract was not completely broken until the demand. The defendant was to safely keep and to deliver the notes upon demand and surrender of the receipt, and there could be no complete breach of this contract until a demand and an offer to deliver the receipt and a refusal to surrender the notes. (*Battley* v. *Faulkner*, 3 Barn. & Ald. 288.)

The case of *Wilkinson* v. *Verity* (*supra*) is in principle a precise authority for the conclusion we have reached. In that case, goods having been bailed by the plaintiff to the defendant for safe custody, the defendant wrongfully sold them, and the plaintiff, more than six years after the day of the sale, being ignorant of the fact of its having taken place, demanded the delivery of the goods, which the defendant refused, and it was held, in an action of detinue for the goods, that the statute of limitations ran from the date of the demand and refusal, and not from that of the sale, inasmuch as the plaintiffs in such a case, though entitled, if they had discovered the sale, to sue immediately for a conversion of the goods, were also entitled to elect to sue upon the breach of the bailee's duty in the ordinary course by the refusal to deliver up on request. It was said in that case by the learned judge writing the opinion that if the action had been for the conversion of the goods, " it would have been impossible to contend that the date of the conversion could be excluded, or to deny that the defense upon the statute was sustained. Nor could the ignorance of the plaintiffs or their predecessors have prevented its operation." On the other hand, said the learned judge, " if the action of detinue is resorted to, as it may be, for the purpose of asserting against a person intrusted for safe custody a breach of his duty as bailee by detention after demand, independent of any other act of conversion such as would make him liable in an action of trover, it should seem that the owner is entitled to sue, at his election, either for a wrongful parting with the property (if he discovers and can prove it), or to wait until there is a breach of the bailee's duty in the ordinary course by refusal to deliver upon

request; and that in the latter case it is no answer for the bailee to say that he has by his own misconduct incapacitated himself from complying with the lawful demand of the bailor." So we reach the conclusion that if this had been an action of trover it would necessarily have been based upon the conversion of these notes in 1866, and would have been barred by the statute; but being an action upon contract based upon the duty of the defendant springing out of a contract relation, the cause of action arose and first became complete at the time of the demand in 1879, and was therefore not barred by the statute.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.