Macomber. J.
That portion of the complaint which' was the subject of evidence, charges that the defendant’s testator, Walter W. Price, did, on or about the 26th day of March, 1865, receive from the plaintiff the sum of $11,500, at par value in United States Government bonds for safe keeping, and that afterwards and in the year 1869, the said Price loaned of the proceeds' of the money realized upon such bonds, the sum of $5,000, leaving $6,500 of the proceeds in his hands, for none of which did he in his life-time, or have the defendants as his personal representatives, accounted to the plaintiff. Also, that in January, 1871, the plaintiff was the owner of five hundred dollars of par value of the capital stock of the Ocean National Bank of the City of New York, which stock was thereafter sold under the direction of the said Walter W. Price and the proceeds thereof received by him for safe keeping for the plaintiff. There is also an allegation that the testator mingled these funds, as well as those arising from the United States bonds, with his own money and used the same in his business, and never has accounted to the plaintiff therefor. Walter W, Price died June 6th, 1876, and this action was begun in November, 1879.
The plaintiff elects by the complaint to treat each of the foregoing debts as existing upon contract alone, but prays that the executors of the testator may account and pay over to her the said several sums of money. The answer puts in issue these allegations of the complaint.
By the case presented the plaintiff seeks to establish by evidence the fact that at the time stated, she was possessed of the *8 property mentioned, together with fifteen hundred dollars of other like bonds which were in her trunk in her house; and that having missed fifteen hundred dollars of the government bonds an alarm was given and the defendant’s testator came to the house with a policeman and took away the property that was left, namely, the $11.500 of government bonds and the $500 of the stock of the Ocean National Bank, to take care of it for her. The idea that dominates the 'entire argument of the learned counsel for the defendant is, that the evidence which has been adduced in favor of the plaintiff to establish such a state of facts has been given solely by the plaintiff herself, who is, of course, an incompetent witness, under section 829 of the Code of Civil Procedure. It becomes necessary, therefore, to examine the case, as we have done with much care, to see how much depends upon the plaintiff’s testimony and how far the plaintiff’s claim, which seems to be a meritorious one, is made out by other and competent testimony.
The witness James P. Bennett went to the plaintiff’s house in company with the testator, and in the presence of the testator and of the plaintiff the subject-matter of a loss by theft of certain securities was mentioned by all the parties, and that after discussing the bearings of the same, the defendant’s testator took the envelope which appeared to contain a number of bonds, but whether there were five or ten or twenty or more, the witness could not say, and put the same in his pocket and went away in company with the policeman to the police department, where the robbery was stated to the officers and the numbers of the missing bonds given, which were taken down by the clerk, and that the testator caused handbills to be struck off for the purpose of distribution among brokers and dealers, advising them of the theft of the bonds containing these numbers. The book is produced, and the entry which was furnished by the testator to the clerk is as follows: Saturday, March 25th, 1865. On duty, McQuade and Elder; Sunday duty, Brush and McQuade ; Sunday night, Farley and Roach. House Robbery. Miss C. B. Tallón (the plaintiff’s maiden name), 56 Hammond street, had stolen five one hundred 5-20 U. S. bonds, numbers 31, 746, 31, 747, third series ; May, coupons, numbers 27, 275, 27, 274; May 1st, 1862, number 49,-142, second series. While at the house, either the testator or the plaintiff herself stated in the presence of the policeman, that the envelope which had been produced contained the remaining bonds. At the time of the appearance of the testator at the plaintiff’s house, they were engaged to be married and they were in fact married in the following July. It is also shown by other evidence than that of the plaintiff, that in November 1869, the testator told one Archibald of his loan to Mr. Rosselle of $50.000 during which conversation he admitted *9 tliat as late as October 1869, tbe plaintiff bad as mncb as ®1 CLOCK) in money wbicb be bad agreed to loan to Rosselle through him; that outside of tbe bonds in question, she had no property prior to 1869 from wbicb she could reabze so large a sum. There is also evidence that about tbe time of tbe Rosselle transaction, the testator sold some government bonds and also sold tbe stock of tbe Ocean National Bank, from which a faff inference may be drawn that be retained tbe proceeds of each sale. It is true that tbe item for tbe sale of tbe government bonds is not shown to be for tbe identical bonds wbicb were in tbe possession of tbe plaintiff in March, 1866, yet, from tbe likeness and tbe sums realized, it is not difficult to' derive a just inference that tbe sum so passed by tbe bank to tbe testator’s credit was derived from no other source than tbe bonds wbicb formerly belonged to tbe plaintiff herself, provided, however, it can once be shown that she bad that amount in value in ber possession and under ber own control and ownership.
There remains, therefore, only one important fact to be made out in order to establish clearly enough for tbe purpose of an adjudication at law, and that is that tbe testator received from tbe plaintiff all the bonds mentioned in the complaint. There is no testimony in tbe case, outside of tbe plaintiff’s, showing tbe exact amount of bonds wbicb was in tbe trunk and contained in tbe envelope which tbe policeman says be saw tbe testator place in bis pocket. Tbe plaintiff herself is called as a witness, and she alone, from tbe nature of tbe case, is tbe only one of all tbe people called who is able to state tbe exact num ber of bonds which she then possessed, and the question is, whether or not it was, under ' section 829, competent for ber so to state tbe fact. If tbe decision of this case on tbe other bearing (33 Hun. 69) is correct, and we, without hesitation, still adhere to it, there is no rule of evidence which would prevent tbe plaintiff from testifying, as an independent fact, that she bad, at the time stated, in ber possession tbe bonds in ques tion. Upon tbe other trial, tbe court, per Davis P. J. says : It was sought to prove that $11,500 of United States bonds belonging to tbe plaintiff were, on tbe morning of tbe 25th of March, 1865, delivered from ber possession into the possession of tbe defendant’s testator. Tiffs was done by showing that, on tbe morning of that day, those bonds were in ber possession in ber trunk in ber room, and that a portion of ber bonds were on that morning discovered by ber to have been stolen. So far, tbe testimony was entirely competent.
We have, then, in this case, sufficient legal evidence to warrant tbe jury, under tbe careful instructions wbicb were given them by tbe court, to adduce tbe conclusion that there was in tbe envelope on tbe morning of tbe 25th of March, 1865, this amount of bonds, and that tbe defendant’s testator took them away with *10 him under circumstances showing that it was done for the safe keeping of the bonds, with the full consent of the plaintiff. The only evidence given by the plaintiff which was submitted to the jury, relates solely to an independent isolated fact of the amount of property which she herself possessed at the time named.
It is true this plaintiff was permitted to give testimony also to the effect that the defendant’s testator came to her home on the morning of the 25th of March, with a policeman. This evidence, however, was subsequently struck out by the court upon the motion of the plaintiff’s counsel, and the jury was particularly cautioned at the close of the charge of the court to disregard it. Ordinarily it would be reprehensible practice to permit a party to give evidence before a jury that was incompetent under the statute, and then, after getting the benefit of it, undertake to deprive the opposite party of an exception in the case by striking it out of the record; yet this question is often an embarrassing one to decide, inasmuch as the decisions upon it are very numerous, and not altogether reconcilable one with the other. The better opinion, perhaps, would be, that to permit a party to say that the deceased came to her home is admitting evidence of a personal transaction. In this case, however, inasmuch as that part of her testimony was merely cumulative, and the fact of the testator’s appearance at her house did not depend upon her testimony in the least (for it is established by the testimony of the detective), Ave think no harm was done by the reception of the testimony and its final rejection.
It is further urged by the counsel for the defendants that the plaintiff was not entitled to recover interest. The jury was instructed upon that subject that interest did not follow as a matter of course and of right, and that no interest could be recovered unless the defendant’s testator had mingled the plaintiff’s property Avith his OAvn, and that the amount of the interest upon the bonds was limited to the value of the coupons, up to the time of their payment. This was a correct statement of the rule, and by it the defendants could not have been in any way prejudiced.
When the case was pending for the first trial before the referee, upon application, the plaintiff was allowed to amend her complaint in certain particulars. This was done against the objection of the defendants. The amended complaint was prepared and served in a regular way, and the defendant’s ansAver was subsequently served to it. Upon this trial before the jury, the defendant’s counsel asked the court to rule and hold that the trial must proceed upon the original complaint, which the court, very properly as we think, declined to do. There is no warrant of authority to hold that an order granting a neAV trial for the erroneous reception of evidence obliterates from the *11 record all tbe amendments wbicb bad been properly ordered during tbe previous stages of tbe case. Tbe question of tbe propriety of tbe amendment, when made upon tbe trial, may be always raised upon tbe appeal from tbe judgment. Tbat question was not considered at tbe former bearing wben it was before tbis court, but we say now tbat tbe granting of the amendment rested in tbe discretion of tbe referee, and tbat such discretion was fairly and properly exercised.
We have examined tbe numerous requests to charge tbe jury made by counsel for tbe defendants, and think tbat their exceptions to tbe refusal of the court to charge in many respects as requested are not well taken. Tbe court ruled tbat no recovery could be bad unless the jury could find from tbe evidence wbicb was submitted to them, that at the time tbe defendant’s testator received tbe bonds, be received them under such circumstances as showed tbat be was to keep them for tbe plaintiff, and tbe learned judge was so pressed by tbe requests of tbe defendant, tbat be went quite beyond what tbe rule would require him to do, and actually instructed the jury tbat they must find tbat tbis evidence made out such a case beyond a reasonable doubt. Certainly tbe defendants could ask no more than tbat, and while we cannot say tbat is tbe correct statement of tbe rule, we do say tbat under tbe facts appearing in tbis case, tbe defendants’ counsel are not in position to complain of it. . Tbe learned judge does say in bis charge: “ I am of tbe opinion tbat there is enough in this case, in tbe facts before you and tbe presumptions, taking into consideration tbe relation of tbe parties, to justify you m coming to tbe conclusion tbat a trust relation did exist between them, and that Price held tbis property in trust for the plaintiff.” We do not think tbat tbis is such an expression of an opinion upon the facts as to prejudice tbe defendants in any respect; it is no more than tbe statement wbicb was doubtless also made in rendering bis decision upon tbe motion for a non-suit, tbat there was sufficient evidence in tbe case to require him to submit tbe case to tbe jury. If there bad not been, in his judgment, sufficient evidence to warrant them to find tbat tbe property was so held in trust for tbe plaintiff, it would have been bis duty to set tbe verdict aside. Tbe case was sharply tried upon one issue, and was fairly presented to tbe jury upon tbat issue alone, namely, whether or not tbe trust existed on tbe part of tbe defendants’ testator to keep tbis property safely, and such being tbe case, no question of tbe statute of limitations could arise, as the cause of action did not accrue until demand was made, and tbe only demand that was made was upon tbe defendants as tbe executors of the testator. (Ganley v. Troy City National Bank, 98 N. Y. 487.)
We think tbe judgment should be affirmed with costs.
Beady and DaNibls, JJ., concur.