NICHOLAS A. ROSSI, Respondent, v MARJORIE ORISTIAN, Appellant.

Fourth Department, December 12, 1975

*Bond, Schoeneck & King (N. Earle Evans* and *David M. Garber* of counsel), for appellant.

*Joseph Winston* for respondent.

MARSH, P. J. This is an appeal by defendant Marjorie Oristian from an order and judgment which granted plaintiff's motion for summary judgment specifically enforcing a stock option agreement and denied defendant Oristian's motion for summary judgment.

Nicholas A. Rossi, Marjorie Oristian and Geraldine Iaia are brother and sisters. On August 20, 1963 an agreement was entered into between the three wherein defendants agreed to give plaintiff a continuing option to purchase the six shares held by each of them in a family corporation for the book value at the time plaintiff exercised the option. The agreement also provided: "1. The second and third parties do hereby grant to the party of the first part [Iaia and Oristian to Rossi] the right, privilege and option to purchase any and all shares of Procino-Rossi Corporation stock which have been or may hereafter be issued to the parties of the second and third part at *any time,* at a price equal to the book value of said shares of stock, as said book value is established or determined on the books of the corporation." (Emphasis added.) Paragraph 5 provided: "The party of the first part is to have the right, title and privilege to vote the stock of the parties of the second and third parts at any time that the said parties of the second and third parts shall have any shares of stock issued to them."

George R. Iocolano averred in his affidavit that he represented E. Alfred Rossi, the late father of plaintiff and defendants, for many years. That prior to August, 1963 he was instructed by E. Alfred Rossi to draw an option agreement intended to give plaintiff a continuing irrevocable option to purchase any and all shares of Procino-Rossi, Inc. held at any time by defendants for the current book value. The father made a gift of the shares to his two daughters with the condition that the stock be subject to the option agreement. His purpose in granting to plaintiff the option evolved around his desire that plaintiff eventually run the business and have

control of the family stock. He wanted the option to continue for the life of plaintiff. There was no consideration given for the stock by defendants. The present ownership of stock is as follows: plaintiff 488.5 shares, defendant Marjorie Oristian 6 shares, defendant Geraldine Iaia 6 shares, treasury stock 500.5 shares. Plaintiff is the principal officer of Procino-Rossi Corporation and was such when the option was granted him by his father who assertedly wanted to induce him to stay with the corporation and maintain it as a family corporation.

In a letter dated July 25, 1967 defendant Oristian advised plaintiff that she revoked the option agreement dated August 20, 1963 and requested that her stock certificates be forwarded to her. In a letter dated August 2, 1967 an attorney representing plaintiff advised defendant that plaintiff wished to exercise his option under the August 20, 1963 agreement. A letter dated August 9, 1967 by attorneys for defendant informed attorneys for plaintiff that defendant had already revoked the agreement. In a letter dated May 20, 1968 sent by certified mail, plaintiff's attorneys demanded that defendant perform under the August 20, 1963 agreement and enclosed an assignment of stock certificate form, a draft drawn on Marine Midland Trust Company in the amount of $8,725.86, the book value of the shares computed from the most recent balance sheet dated December 31, 1967 and a copy of the option agreement. In a letter dated May 22, 1968 defendant returned all the enclosures including the Marine Midland draft to plaintiff, stating that the option agreement was no longer operative and she did not wish to sell the stock.

In her motion for summary judgment defendant asserts that pursuant to the option agreement the six-year Statute of Limitations commenced to run at the time that she sent the letter revoking the option July 25, 1967. Plaintiff did not deliver the summons to the Sheriff of Cayuga County until May 20, 1974. Another copy was delivered to the Sheriff's Department of Montgomery County, State of Maryland, which was served on defendant June 5, 1974. The six-year Statute of Limitations would have run if computed from defendant's contractual repudiation of July 25, 1967.

An action such as the present one based on a stock option agreement which provides that plaintiff might exercise the option at any time, presents a situation where the Statute of Limitations does not commence to run until the person granted the option demands the stock *(Williams v Flagg*

*Storage Warehouse Co.,* 128 Misc 566, affd 221 App Div 788). In *Williams* the court held that the right of the holder of a warehouse receipt was a continuing right and that the cause of action did not accrue for Statute of Limitations purposes until the owner made a demand for the delivery of the coffee called for by the warehouse receipt. In *Matter of Scheftel* (155 Misc 632) the court held that a stock call, to be exercised at any time, did not commence the running of the Statute of Limitations until the call was actually made. In *Matter of Furgueson v LaGuardia* (171 Misc 270, affd 257 App Div 1048, affd 281 NY 678) the court held that the Statute of Limitations did not commence to run on the amount of an annuity held on deposit until a demand had been made for the annuity funds. In *Ganley v Troy City Nat. Bank* (98 NY 487) the Court of Appeals held that a cause of action for return of treasury bonds left on deposit with the bank did not accrue until after a demand for the bonds was made. In *Ganley* defendant bank argued that it had sold plaintiff's bonds prior to the demand, asserting that the Statute of Limitations ran from the sale and not from plaintiff's demand. The Court of Appeals held that the bank could not allege its own wrong for purposes of causing the Statute of Limitations to run at an earlier date, hence the contract was not broken until the demand and refusal to comply.

We find that the Statute of Limitations did not commence to run until plaintiff made a demand under the option agreement which defendants were obliged to honor. Such a demand was not made until the letter of May 20, 1968 in which the bank draft, the last balance sheet and the assignment of stock certificate form were sent to defendants in the demand letter. Plaintiff having properly exercised the option within the terms of the agreement in the May 20, 1968 letter, defendant breached her contract by returning the bank draft and refusing to execute the stock assignment, which rejection reached plaintiff on May 24, 1968.

Since the summons was not served personally upon defendant until June 5, 1974, the six-year Statute of Limitations would have expired unless the delivery thereof to the Sheriff of Cayuga County served to toll the running of the statute for 60 days within which to effect personal service. The statute provides as follows:

"§ 203. Methods of computing periods of limitation generally.

"(a) Accrual of cause of action and interposition of claim. The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed.

"(b) Claim in complaint. A claim asserted in the complaint is interposed against the defendant or a co-defendant united in interest with him when: * * *

"5. the summons is delivered for service upon the defendant to the sheriff in a county in which the defendant resides, is employed or is doing business, or if none of the foregoing be known to plaintiff after reasonable inquiry, then in a county in which defendant is known to have last resided, been employed or been engaged in business, or, where the defendant is a corporation, in a county in which it may be served, if the summons is served upon the defendant within sixty days after the period of limitation would have expired but for this provision, or first publication of the summons against the defendant is made pursuant to an order within sixty days after the period of limitation would have expired but for this provision and publication is subsequently completed, or, where the defendant dies within sixty days after the period of limitation would have expired but for this provision and before the summons is served upon him or publication is completed, if the summons is served upon his executor or administrator within sixty days after letters are issued; or". (CPLR 203.)

Defendant concedes that she last resided in Cayuga County, State of New York, before moving to Maryland. It would appear that the statute applied to her and that delivery of the summons to the Sheriff of Cayuga County tolled the statute for 60 days within which time she was served at her Maryland residence by a Deputy Sheriff of Montgomery County, Maryland. Defendant urges that under the wording of the statute, if plaintiff knew the residence of defendant outside the State, delivery of the summons to the Sheriff of the county in New York State where defendant last resided would not toll the statute. This is not supported by statutory or case law (1 Weinstein-Korn-Miller, NY Civ Prac, par 203.16). Under the Civil Practice Act it was held that the words "last resided" referred to a defendant who last resided in a county within the State of New York and then moved out of State and that the statute permitted delivery of the summons to the Sheriff

in such county, giving plaintiff 60 additional days to find the defendant for personal or other service *(Matthews v Pisani,* 203 Misc 583). The change in the statute was effected to eliminate the restrictive interpretation of the former statute (Civ Prac Act, § 17) which held that if defendant still resided in the State of New York the only proper delivery to permit the tolling for 60 days had to be in the county where defendant actually resided *(Guilford v Brody,* 237 App Div 726) and was not intended to affect service on defendants who had moved from the State and had a residence outside the State *(Mooney v Fortuin,* 49 Misc 2d 85). The Statute of Limitations was tolled by virtue of CPLR 203 (subd [b], par 5) for 60 days after the summons was delivered to the Sheriff of Cayuga County and actually was served upon defendant within such 60 days at her residence in Montgomery County, Maryland *(Matthews v Pisani, supra).*

Finally, defendant raises a substantive argument concerning the duration of the option. The agreement provides that plaintiff may exercise rights to the stock held by defendant at any time. Defendant argues that "any time" must be construed as a reasonable time and that a reasonable time expired prior to plaintiff's demand. Plaintiff presented an evidentiary affidavit stating that he was principal officer of the subject corporation when the agreement was executed and that it was executed to induce him to continue operating the family corporation and that "any time" meant during the lifetime of plaintiff. This interpretation coincides with paragraph 5 which gives to plaintiff from the inception of the agreement the right to vote the shares held by the defendants. In her affidavit defendant does not contest that this was the purpose of the stock agreement, nor does she deny the assertions by the attorney who drafted the agreement for her father. To the extent that an ambiguity exists, the surrounding circumstances may be used to express more completely what was intended by the language "any time", to wit, to encompass plaintiff's lifetime. Defendant gives no reason for asserting that less than five years was an unreasonable period during which the option should remain open.

The judgment and order appealed from should be affirmed.

MOULE, CARDAMONE, GOLDMAN and WITMER, JJ., concur.

Order and judgment unanimously affirmed, without costs.